JOSEPH JOHNSON and GEORGE W. JOHNSON, Respondents, *v.* THE CITY OF NEW YORK, Appellant.

Second Department, March 26, 1920.

Contracts — municipal contract for construction of sewer — provision that construction may be suspended by borough president construed — suspension of work by reason of failure of city to appropriate funds to pay engineers and inspectors — contractor entitled to recover.

Although a municipal contract for the construction of a sewer in the city of New York provided that the borough president may suspend the work contracted to be done "if he shall deem it for the interest of The City so to do," without compensation to the contractor for such suspension other than extending the time for completing the work, the contractor may, nevertheless, recover damages where a suspension of the work on the contract was caused solely by the fact that the city authorities failed to appropriate funds for the payment of engineers and inspectors necessary to supervise the construction.

Said clause in the contract did not empower the city to impose expense upon the contractor by reason of its own failure to perform its obligations thereunder.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Richmond on the 8th day of February, 1919, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 13th day of February, 1919, denying defendant's motion for a new trial made upon the minutes.

*William A. Walling* [*William P. Burr,* Corporation Counsel, *John F. O'Brien* and *James A. Donnelly* with him on the brief], for the appellant.

*John C. Wait* [*Howard G. Wilson* with him on the brief], for the respondents.

BLACKMAR, J.:

The plaintiffs, contractors, have recovered a judgment for $5,345.22 against the city of New York for damages caused by the suspension of their work in constructing a sewer. The city, appealing, claims that by the express terms of the contract such damages are at the charge of the contractors. The contract, which was made on September 19, 1912, was for the construction of a section of a sewer in Staten Island. Work was begun soon thereafter and continued until March 6, 1913, when the engineer in charge notified plaintiffs to cease work on account of the failure of the board of estimate and apportionment to appropriate sufficient funds to pay for the engineering and inspection necessary to complete the sewer. Work was accordingly suspended until May 17, 1913, when, the requisite appropriation of funds having been made, it was, on the direction of the defendant, resumed and completed. It is for the damages caused by the suspension of the work that the judgment under consideration was rendered.

The contract contains the following clause: " The President [of the borough] may suspend the whole or any part of the work herein contracted to be done if he shall deem it for the interest of The City so to do, without compensation to the Contractor for such suspension other than extending the time for completing the work as much as it may be, in the opinion of the President, delayed by such suspension." As I understand it, the claim of the appellant that it is not liable rests primarily upon this clause in the contract.

If the clause is applicable to the suspension of the work under the circumstances of this case, the contractors must suffer the heavy loss caused thereby. In the absence of fraud or mistake, the contract made by the parties, however burdensome it may prove in execution, must govern. It is no excuse that a party to a contract did not foresee a hardship which its operation might entail. It is the function of the courts to enforce contracts according to their true intent and meaning, and neither to mitigate nor relieve against their operation. (*Norcross* v. *Wills,* 198 N. Y. 336; *Mechanics' Bank* v. *City of New York,* 164 App. Div. 128.) This contract gives the president of the borough the right to suspend the work whenever he deems it for the interests of the city so to do. This is not an arbitrary power, to be exercised at his will. It must be used in the just interests of the city. The limitation of the power is prescribed in the phraseology of the clause which grants it. The intent of the parties, which is the touchstone of interpretation, must, however, be gathered from the whole contract, read in the light of the existing facts with reference to which it was framed. The contract imposed certain obligations on each of the parties. The city was under the obligation, necessarily implied, to furnish the funds required to discharge the expense of the supervision under which the plaintiffs were to do the work. This is as plainly the duty of the city as if it had been written into the contract in so many words. Without this, the work could not proceed. The work must be supervised, measured and approved by engineers in the employ of the city. It was by virtue of such supervision that the city was to secure the proper performance of the contract, and the plaintiffs agreed to submit their work to the city's engineer and accept his arbitrament as to its character, measure and value. As the work could not proceed without engineering and inspection, the obligation of the city to furnish engineers and inspectors was concurrent with the work. An obligation necessarily implied from the whole purpose and scope of the contract is as much a part thereof as if expressed in its wording. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *City of New York* v. *Delli Paoli,* 202 id. 18; *Wigand* v. *Bachmann-Bechtel Brewing Co.,* 222 id. 278.) It is obvious that the president of the

borough assumed to suspend the work because the city had failed in its obligation under the contract to furnish inspectors and engineers. The letter of the engineer in charge, expressing the president's direction to suspend work, puts it squarely upon that ground, and the undisputed evidence of the case is that when the work was suspended the unincumbered balance in the fund applicable to the expense of supervision was only $6.97, whereas the February payroll for engineers and inspectors, then unpaid, was $349.60, and the estimated engineers' and inspectors' salaries for the time necessary to complete the work was $988.

Was it the intent of the parties that this power to suspend work, entailing as it did great expense on the contractors, could be exercised because the city had failed in the performance of its obligation? I think not. It cannot be assumed that a clause in the contract was intended to authorize one of the parties to impose the result of its own default upon the other. A court should not so interpret a contract unless required so to do by the most explicit terms. There is room enough for the proper operation of the clause without giving it an interpretation so unreasonable. The city was bound to furnish inspectors and engineers. Without them the work could not proceed. The city suspended work on the contract because it had no appropriation for such engineering and inspection. Therefore, the city suspended the work because it had failed in its obligation. The quoted clause cannot be construed to authorize such an unreasonable and unjust result. It cannot in its true meaning be said to authorize the suspension of the work in the interest of the city, when used to relieve the city from the result of a violation of its duty under the contract. It is the interest of the city in performance and not in breach which justifies a suspension of the work.

As no other point was made by the brief of the appellant, it is unnecessary to consider other points discussed by the respondents.

The judgment and order should be affirmed, with costs.

Present — JENKS, P. J., MILLS, PUTNAM, BLACKMAR and KELLY, JJ.

Judgment and order unanimously affirmed, with costs.