THE PEOPLE OF THE STATE OF NEW YORK ex rel. WELLS AND NEWTON COMPANY OF NEW YORK, Appellant, *v.* CHARLES L. CRAIG, as Comptroller of the City of New York, et al., Respondents.

New York city — board of education a corporation separate and distinct from city — section 149 of charter, providing for adjustment of claims against city, and section 261, prohibiting prosecution of claim until thirty days after presentation to comptroller, do not apply to claims against board of education — power of audit rested in board of education — when action . of board of education effective as audit of claim — when clause in contract permitting extension of time for completion of work may not be invoked to defeat claim for damage to contractor by reason of "delay" arising from fault of others — arrangement for completion of work not a new contract — agreement to pay additional expense occasioned by delay not grant of extra compensation within prohibition of Constitution.

1. The board of education of the city of New York is a corporation separate and distinct from the city and as such is charged by the state with the administration of its public educational system in the city of New York. The powers so conferred are exclusive. The grant of the same to the board of education negatives authority in the municipality to exercise like powers. As between the two corporate bodies the relation of principal and agent does not exist.

2. Section 149 of the charter of the city of New York, which confers upon the comptroller power " to settle and adjust all claims in favor of or against the corporation (the city) and all accounts in which the corporation (the city) is concerned as debtor or creditor," and section 261 of said charter, which provides that no action or special proceeding for any cause whatever shall be prosecuted or maintained against the city of New York, unless the moving papers disclose that at least thirty days have elapsed since the demand or claims upon which such proceeding is founded were presented to the comptroller for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment, apply only to claims against the city and not to one asserted against the board of education.

3. The provision of subdivision 7 of section 877 of the Education Law, as amended (L. 1917,·ch. 786), that " The board of education shall administer all moneys appropriated or available for educational

126  People ex rel. Wells & Newton Co. *v.* Craig.

[232 N. Y. 125]  .  Statement of case.  [Nov.,

purposes in the city, subject to the provision of law relating to the audit and payment of salaries and other claims by the department of finance," must be read in connection with section 880 of the Education Law, which provides that school funds shall be disbursed only by the board of education, and clothes that body with power of audit.

4. Upon examination of the action of the board of estimate and apportionment and the board of aldermen in resolutions respectively adopted which appropriated a certain sum " or so much thereof as may be required," for payment of the claims of the relator herein, pursuant to a requisition from the board of education, *held,* that the contention that the amount due to relator was left undetermined and that the action of the board of education was not effective as an audit of the claim of relator and such claim had never been audited is not sustained.

5. By a clause in the contract between the board of education of the city of New York and the relator, for the installation of heating and ventilating apparatus in a school building in course of construction, the board's committee was authorized to extend the time of the relator to complete its contract " if the work be delayed by any act or omission of the city  *  *  *  or any act or omission of any contractor to perform his work." It was contended that thereby said committee, by reason of defaults of construction contractors, was authorized to extend the time of relator to complete its contract (not by reason of act or solicitation on the part of relator, who was ready and willing to complete its contract within the time prescribed therein, but because of defaults of other contractors) for a period of three years during which time relator would continue bound by the terms of its contract while the board of education would not be liable to relator for any damage caused it by such delay. *Held,* untenable; that the clause must be construed as inapplicable to delays so great or so unreasonable that they may fairly be deemed equivalent to an abandonment of the contract and thus interpreted was not a bar to relator's claim.

6. An arrangement made between the board of education and relator, whereby the latter agreed to resume work and complete its contract, did not operate as a new contract between the parties nor can it be construed as a modification of the existing contract in violation of section 28 of article 3 of the Constitution of the state prohibiting the granting of extra compensation to a contractor. (*Gunnison* v. *Board of Education,* 176 N. Y. 11, 17, followed.)

*People ex rel. Wells & Newton Co.* v. *Craig,* 197 App. Div. 407, reversed.

(Argued October 4, 1921; decided November 22, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 1, 1921, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus to compel defendants to execute and deliver a warrant in payment of a claim of relator and denied said motion.

*Thomas F. Conway, Joseph A. Kellogg, Thomas E. O'Brien* and *J. Power Donellan* for appellant. This is a proper case for the issue of a peremptory writ of mandamus if the relator is entitled to payment. (*Matter of Freel,* 148 N. Y. 165; *People ex rel. Beck* v. *Coler,* 34 App. Div. 167; *People ex rel. Kings Co. Gas Co.* v. *Schieren,* 89 Hun, 220; *People ex rel. Rodgers* v. *Coler,* 56 App. Div. 98, 102; 166 N. Y. 1; *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Havemeyer,* 16 Abb. Pr. [N. S.] 219; *Snyder* v. *City of New York,* 74 App. Div. 421.) So far as the present situation is concerned, the comptroller is but a ministerial officer charged with the duty of drawing a warrant against the fund appropriated for the specific purpose of making payment to the relator of the amount "found to be due," which amount was thereafter duly audited pursuant to section 880, subdivision 3, of the Education Law, by the board of education. (*Snyder* v. *City of New York,* 74 App. Div. 421; *Gunnison* v. *Bd. of Education,* 176 N. Y. 11; *Titusville Iron Co.* v. *City of New York,* 207 N. Y. 203; *Smith* v. *Bd. of Education,* 208 N. Y. 84; *Hirshfield* v. *Cook,* 227 N. Y. 297; *Ackley* v. *Bd. of Education,* 174 App. Div. 44.) A construction of the contract which puts the relator entirely at the mercy of the city is unthinkable. (*Industrial & Gen. Tr., Ltd.,* v. *Tod,* 180 N. Y. 215; *Russell* v. *Allerton,* 108 N. Y. 288; *Gage* v. *City,* 110 App. Div. 403; *Horgan* v. *Mayor, etc.,* 160 N. Y. 516; *Simon* v. *Etgen,* 213 N. Y. 589; *Johnson* v. *City of New York,* 191 App. Div. 205; 231 N. Y. 564; *Mechanics' Bank* v. *City,* 164 App. Div. 128; *Thilemann* v. *City,* 82 App. Div. 136; *Del Genovese* v. *Third Ave. R. R.*

*Co.,* 13 App. Div. 412; 162 N. Y. 614; *Booth* v. *Cleveland Mill Co.,* 74 N. Y. 15; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205.)

*John P. O'Brien, Corporation Counsel (Willard S. Allen, John F. O'Brien, Arthur J. W. Hilly, Samuel J. Resnick* and *Harold Taylor* of counsel), for respondents. Relator must show a clear legal right to the writ of mandamus. (*People ex rel. McMackin* v. *Board of Police,* 107 N. Y. 235; *People ex-rel. McCabe* v. *Matthies,* 179 N. Y. 242.) The relator failed to allege in its moving papers that it had complied with the provisions of section 261 of the Greater New York charter (L. 1901, ch. 466, § 261). (*Ruprecht* v. *City of New York,* 102 App. Div. 309; *Smith* v. *City of New York,* 88 App. Div. 606.) If the alleged agreement between the relator and the board of education, relied upon by the relator, may be claimed to constitute either a new contract or a modification of the original contract between the parties for the completion of the work which the relator had agreed to perform but had abandoned, such contract was illegal and void. (L. 1901, ch. 466, § 419; L. 1917, ch. 786, § 875, subd. 8.)

HOGAN, J.   October 25th, 1915, relator entered into a contract with the board of education of the city of New York, through its committee on buildings, for the installation of a heating and ventilating apparatus in Evander Childs High School, borough of The Bronx, New York city, the same to be completed within one hundred twenty days.

Due to defaults of contractors having in charge the construction of the building, relator was prevented from proceeding with the work under its contract within the time prescribed therein, and for a period of upwards of two years subsequent thereto. About June, 1918, the relator still deprived of opportunity to complete its contract, appreciating that the continued defaults on

the part of the city had resulted in serious damages to it, announced to the board of education that it refused to continue the work under its contract and refused to longer be bound thereby unless the city and board of education would enter into a binding agreement with it to pay its claim then and theretofore asserted by it for extra expense incidental to the delays caused it in the carrying out of the contract in the previous prosecution of the work thereunder and in completion of the further work covered thereby.

July 3d, 1918, the vice-president of the board of education addressed a communication to the attorney for relator in which he stated that no disposition existed on the part of the board of education to treat the situation other than with a spirit of fairness to relator, but in so doing it was essential that the board should act with caution so as to preserve its rights against the sureties of defaulting construction contractors, further that he was prepared to submit a resolution to the board of education reciting the facts and complications that had arisen, providing for a continuation of the work by the relator under the terms of the then contract until completion, that the board of education acknowledged that the relator would have a claim for extra expenses incidental to the carrying out of the contract, the amount of which was not definable at that time, " said extra expenses arise because of certain delays and the enhanced prices of labor and materials due to present day extraordinary conditions;" that upon completion of the work to be performed under the existing contract the board of education will entertain a claim in detail and settle the same either (1) by agreement, (2) by arbitration, or (3) by judicial decision on agreed state of facts, " If you will assent I will offer the requisite resolution."

Upon receipt of such communication relator indorsed upon the same its acceptance of the terms proposed and

9

an agreement to immediately resume work. Thereafter and on the same day, July 3d, 1918, the board of education adopted a resolution, the preamble of which recited the contract of October 25th, 1915, between it and the relator; that relator had been paid thereon the sum of $50,823, leaving a balance of work in a state of performance or being performed amounting to $23,947; that completion of the work thereunder had been delayed by reason of the failure of the original construction contractor to perform the work required under his contract and such contractor had been declared in default and his contract terminated in the interest of the board; that the construction work had been relet three times due to defaults, and the interests of the board demand the completion of the High School building without further delay. The resolution adopted was in substance that work under the contract with relator be continued until completion; that the board of education acknowledges that by reason of continuation of the contract by relator, the latter will have a claim for extra expense, the amount of which is not definable at this time, the said extra expense arising out of delays on the part of other contractors and the enhanced prices of labor and materials due to present day extraordinary conditions; that the board of education upon completion of the work required to be performed under the existing contract, will entertain a claim in detail and settle the same by either one of the following methods: (1) By agreement; (2) by arbitration, or (3) by judicial decision on an agreed state of facts; that the work called for under the contract be proceeded with without delay under the direction of the superintendent of school buildings.

Relator thereupon resumed work under its contract and fully completed the same in May, 1920, notwithstanding additional delay caused by defaults of construction contractors, and thereupon employed two several certified public accountants to make an exami-

nation and audit of its books of account relating to the contract with the board of education. The payrolls for labor, the bills for purchase of materials, etc., of relator were compared with its books and found to be correct and a detailed statement of the same rendered by the accountants to relator. The statement together with supporting tabulations or schedules of cost was submitted to the board of education.

The statement prepared by the accountants fixed the total direct cost to relator $105,480.69, plus overhead of $18,986.52, or a total of $124,467.21, and added thereto as a profit for doing the work ten per cent, amounting to $12,446.72, making in the aggregate $136,913.93.

In June following, the board of education requested and relator furnished to it affidavits of the public accountants who had made the examination and audit for relator. Such affidavits made reference to the statement already made and further stated that the rates and charges for labor and materials agreed with the rates and charges appearing on the payrolls, records and books of account of relator; that the rates charged for labor were the rates actually paid; that the prices charged for materials were the prices actually paid for the same; that no interest charges had been made for money used; that the profits and overhead expenses were reasonable. The affidavits were supported by an affidavit of the president of relator.

The claim was referred to the auditor of the board of education who made further inquiry as to correctness of the same. On July 12th one of the accountants made a further report to such auditor in which was contained a detailed statement of the wages paid by relator to various classes of mechanics during the various years from the time the work commenced in October, 1915, to the completion of the same in 1920. Accompanying the statement there was furnished the auditor of the board of education a detailed statement of rates of

compensation paid to mechanics, etc., which rates appeared in a schedule prepared by the Building Trades Association, also a like statement furnished by Heating and Piping Contractors of the city of New York.

On July 22d, 1920, the auditor of the board of education submitted a report to the president of the board, in which he recited at length all the foregoing facts in detail and submitted all documents relating thereto, and stated that from the evidence which the bureau had secured, it seemed that the total direct cost plus overhead was $124,467.21, and plus 10% for profit, $136,913.93, and

"The bureau is without any evidence which we can use to offset or deny the claim nor does it appear that it was the original intention of the Board of Education to do other than meet the situation in a fair and reasonable way."

He suggested the settlement of the claim was a matter for determination by the board, either by allowance in full or by some method of compromise which might be agreed upon and acceptable to all parties concerned, and whatever sum or allowance the board deemed proper to make he believed it would be necessary to submit to the board of estimate and apportionment a special estimate under subdivision 8, section 877, Education Law (Cons. Laws, ch. 16), to meet same.

July 30th, 1920, a resolution was adopted by the board of education wherein it requested the board of estimate and apportionment to "appropriate the sum of $62,143.93, such appropriation or so much thereof as may be required to be used for the purpose of making payment to the Wells & Newton Company of New York of the amount found to be due and resulting from work performed at the Evander Childs High School, Borough of The Bronx, in accordance with the terms and stipulations contained in preambles and resolutions adopted by the Board of Education on July 3rd, 1918, the said preamble and resolutions continuing in performance a

contract for the work of installing heating and ventilating apparatus at the named school building, entered into between the Wells & Newton Company of New York and the Board of Education on October 25th, 1915."

The amount of $62,143.93 stated in the resolution was the difference between the sum of $136,913.93, hereinbefore referred to, and $74,770, theretofore paid to relator.

August 6th, 1920, when the board of estimate and apportionment considered the estimate and resolution of the board of education it had before it all documents relating to the facts, all affidavits, statements, computations, reports of the auditor of the board of education and of all proceedings had. On that day the board of estimate and apportionment appropriated, subject to the approval of the board of aldermen, the sum of $62,143.93, and after such approval authorized the comptroller to issue special revenue bonds, the proceeds to the amount of the par value or as much thereof as shall be required to be used to pay whatever claim may be found in favor of the Wells & Newton Company under the provisions of law relating to the audit and payment of salaries and other claims by the department of finance. The resolution was unanimously adopted.

August 17th, the board of aldermen by a resolution of like tenor concurred in the resolution adopted by the board of estimate and apportionment. Such resolution of the board was approved by the mayor.

August 24th, 1920, a document entitled "Payment Voucher and final certificate" and then described as "Payment Voucher to Wells & Newton Company of New York, Avenue B and 17th Street, New York City, August 20, 1920. For work performed at the Evander Childs High School, Borough of Bronx as per the following resolution adopted by the Board of Education July 30th, 1920" (then followed a copy of the resolution) and followed by the figures $62,143.93, representing the amount of the voucher, was issued. Accompanying the

134   People ex rel. Wells & Newton Co. v. Craig.

[232 N. Y. 125]        Opinion, per Hogan, J.        [Nov.,

same and referred to therein were resolutions of the board of estimate and apportionment and board of aldermen, statements, affidavits, exhibits, reports of various officers, letters, etc., in fact all of the exhibits appearing in the record herein, to which was annexed a certificate of the examiner of the board of education that the accompanying claim had been examined by him and he certified that it is correct as to calculations and extensions, that the prices are reasonable and just and that no claim for the work or supplies done or furnished had theretofore been presented or paid. A further certificate made by the auditor and chief clerk of the board of education was attached wherein it was certified that the bill of relator for $62,143.93 had been examined and audited and was chargeable to the appropriations made, and was in conformity with the Education Law and the by-laws and regulations of the board of education.

The certificate together with all documents therein referred to was filed in the office of the comptroller on the same day, August 24th, 1920. Despite frequent requests made of the comptroller to draw a warrant for the payment of the account, no warrant was drawn. No objection was urged by the comptroller to the drawing of a warrant or legal reason urged for delay in issuance of the same. Upwards of four months having elapsed without action by the comptroller or heed given to the requests of relator this proceeding was instituted.

The application of relator for a writ of mandamus was granted at Special Term. The order of the Special Term was reversed by the Appellate Division and the writ denied as matter of law and not in the exercise of discretion. Relator appealed to this court.

Preliminary to a consideration of the argument of respondent in support of the decision of the Appellate Division adverse to the right of the relator to maintain this proceeding, attention should be called to the relations between the board of education and the city of New

York. That the board of education is a corporation separate and distinct from the city and as such charged by the state with the administration of its public educational system in the city of New York has been determined and reiterated in numerous decisions of this court. As such governmental agency its powers and duties are prescribed in the Education Law, which statute likewise imposes obligations upon the city and defines certain procedure to be followed between the two corporate bodies.

In so far as material to be considered in the instant case, the board of education was by the Education Law clothed with power to purchase sites for and construct school buildings; to purchase apparatus, equipment and supplies necessary for the management of the schools; to provide such regulations and by-laws as may be necessary to make effectual the provisions of the Education Law; and the transaction of its business affairs and for the general management, operation, control, maintainance and discipline of the schools and other interests under its charge or direction; to perform such other duties and possess such other powers as may be required to administer the affairs placed under its control and management; to execute all powers vested in it and to promote the best interests of the schools and other activities committed to its care.

The powers conferred upon the board of education to administer the public educational system within the confines of the city of New York were exclusive. The grant of the same to the board of education negatives authority in the municipality to exercise like powers. As between the two corporate bodies the relation of principal and agent does not exist. (*Titusville Iron Co.* v. *City of New York*, 207 N. Y. 203.) With the stated conclusions in mind, we pass to a consideration of certain objections to the granting of the relief prayed for by relator made by respondent and upon which stress was laid in the opinion of the Appellate Division.

It was there urged and held that the proceeding could not be maintained because of the provisions of section 261 of the charter of the city which provides no action or special proceeding for any cause whatever shall be prosecuted or maintained against the city of New York, unless the moving papers disclose that at least thirty days have elapsed since the demand or claims upon which such proceeding is founded were presented to the comptroller for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment. Concededly the moving papers do not contain the allegation required by the section quoted.

The Appellate Division held the omission fatal; that the city of New York was a party to the proceeding and the real party in interest; that the act of the official required to be performed by the order of the Special Term directly affects the city; that the provision of the charter was a most salutary one providing the city's chief financial officer with an opportunity of investigating all claims sought to be enforced against the city, giving him reasonable time for his investigation, and thus preventing imposition and fraud. I am in accord with the opinion of the Appellate Division in so far as it defines the general purpose to be attained by the section of the charter quoted. I am at variance with the conclusion that the provision is applicable to the instant case.

The board of education alone was authorized to erect the school building, contract for the erection thereof and for the heating and ventilating apparatus therein. The contracts entered into were not contracts of the city but of the body corporate designated by the state for such purpose. Three several contractors for the erection of the school building defaulted. The right to recover damages against them severally for breach of contract was vested in the board of education, not in the city. Had the board of education breached its contract, action

for damages caused thereby would be maintainable only against that body, the authorized contracting party. True, the city was made a party to the proceeding, but it was not a necessary or proper party thereto. Section 261 of the charter applies only to claims against the city. Relator's claim was not against the city. Any claim asserted by it was against the board of education and could properly be presented to that body for consideration and action.

In *Gunnison* v. *Board of Education* (176 N. Y. 11, 17) we said: "The only relation that the city has to the subject of public education is as the custodian and depositary of school funds, and its only duty with respect to that fund is to keep it safely and disburse the same according to the instructions of the board of education. The city as trustee has title to the money, but it is under the care, control and administration of the board of education."

The conclusion reached as to the applicability of section 261 applies equally to section 149 of the charter, relied upon by respondent, which latter section confers upon the comptroller power " to settle and adjust all claims in favor of or against the corporation (the city) and all accounts in which the corporation (the city) is concerned as debtor or creditor."

A consideration of the statutory method to be adopted for providing means to carry on the system of public education in the city of New York, the custody of the fund and disposition to be made of the same is of importance.

Subdivision 7 of section 877 of the Education Law, as amended (Laws of 1917, chap. 786) in substance requires the board of education to file an estimate of moneys to be expended by it for school purposes, giving in detail items for salaries, maintenance, purchase of real property, erection of buildings, etc. If such estimate does not exceed four and nine-tenths mills on every dollar of assessed valuation of real and personal property in the

city liable to taxation, the board of estimate and appor-
tionment under the mandatory language of the law is
required to appropriate the amount of the estimate.  If
the amount of the estimate exceeds such percentage of
the assessed valuation, *such excess* shall be subject to
such consideration and such action by the board of
estimate and apportionment, the board of aldermen and
the mayor as that taken upon departmental estimates
submitted to the board of estimate and apportionment.
Authority to make additional appropriations for educa-
tional purposes is conferred upon the board of estimate
and apportionment.

The money appropriated for school purposes is required
to be held in two funds:  A general fund for the payment
of salaries of all employees in the supervising and teaching
staff including the superintendent and associates, lecturers,
etc.   A special fund to embrace all moneys not comprised
in the general fund.   Then follows: " The Board of Educa-
tion shall administer all moneys appropriated or available
for educational purposes in the city, subject to the pro-
visions of law relating to the audit and payment of
salaries and other claims by the department of finance."

Subdivision 8 provides: " A board of education may,
to meet emergencies which may arise, submit a special
estimate in which items for extraordinary expenses may
be submitted to meet such emergencies.   Such estimate
shall contain a complete statement of the purposes for
which the items are requested and the necessity therefor.
The same method of procedure shall be followed in
submitting such estimate and such estimate shall be
subject to the same consideration and action as is required
in the submission, consideration and action upon the
regular annual estimate submitted by a board of
education."

Section 880 of the Education Law provides that all
funds collected or received from any source for school
purposes shall be paid into the treasury of the city and

shall be credited to the board of education, that such funds shall be disbursed *only* by authority of the board of education and upon written orders drawn on the city treasurer or other fiscal officer of the city, such orders to be signed by the superintendent of schools and the secretary of the board of education or such other officer as the board may authorize. The city treasurer is inhibited from permitting the use of said funds for any purpose other than that for which they are lawfully authorized or paying out said funds *except on audit of the board of education* and the countersignature of the comptroller. A casual reading of the Education Law leads to the conclusion so tersely stated in the *Gunnison* case that the only relation of the city to the subject of education is as custodian of the school funds and to disburse the same according to the instructions of the board of education.

The language quoted from subdivision 7, " The board of education shall administer all moneys appropriated or available for educational purposes in the city, subject to the provisions of law relating to the audit and payment of salaries and other claims by the department of finance," must be read in connection with section 880 of the Education Law which provides that school funds shall be disbursed only by the board of education, and clothes that body with power of audit.

The power vested in the board of education to administer the school fund is a grant of authority to that body to fix salaries of all employees of the board. Such salaries when fixed by the board are presumably embodied in the estimate filed with the board of estimate and apportionment. Upon receipt of a requisition from the board of education the comptroller is authorized to ascertain whether or not the requisition made upon him embraces charges against the education fund as disclosed in the record in his department relating to the board of education. If such requisition be found correct there

remains but one duty on the part of the comptroller, viz., to draw the necessary warrant for the payment of the salaries, etc. He is powerless to exercise a power of audit conferred on the board of education. We cannot ascribe to the legislature an intention to provide for two several boards of audit. The language used in subdivision 7 was applicable only to the procedure to be adopted by the board of education, that in the disbursement of its funds it shall adopt the procedure prevailing in the case of claims against the city, require as it did in the case at bar presentation of the claim, proofs in support of the validity of the same, the extent and value of the labor and material and generally all information obtainable relating thereto before any allowance or audit of the same shall be made. Had relator in the first instance filed its claim with the comptroller, as is asserted it should have done, and the comptroller audited the same for a stated amount and drawn a warrant for the same on the city treasurer, the latter officer could not pay the same save by a violation of the provision of the Education Law which prohibits the treasurer from making payment from the school fund except on audit of the board of education.

The Appellate Division attached importance to the fact that the board of estimate and apportionment and the board of aldermen in the resolutions respectively adopted, appropriated the sum of $62,143.93, " or so much thereof as may be required," and held that thereby the amount due to relator was left undetermined and also concluded that the action of the board of education was not effective as an audit of the claim of relator and such claim had never been audited. A consideration of the following facts leads me to a contrary conclusion. The resolution adopted by the board of education together with the voluminous report of the auditor of that body were transmitted to the board of estimate and apportionment on July 31, 1920. On August sixth the board

of estimate and apportionment acted upon the same and adopted a resolution which first embraced the resolution of the board of education and communication from the secretary of that board transmitting the same, then followed a recitation in substance that the board of education had made requisition upon the board of estimate and apportionment for an appropriation under the provisions of section 877, subdivision 8, Education Law (hereinbefore cited) of $62,143.93, " such appropriation or so much thereof as may be required to be used for the purpose of making payment to the Wells & Newton Company of New York of the amount found to be due and resulting from work at the Evander Childs High School, Borough of The Bronx, in performance of a contract for the work of installing heating and ventilating apparatus at said named school building." Then followed the appropriation of $62,143.93 subject to the approval of the board of aldermen to be used, etc., as above quoted.

The board of education in the resolution adopted by it, after a complete examination of the claim of relator and of the numerous reports, computations and affidavits submitted to it, together with the report of the auditor of the board fixed the sum of $62,143.93 as the amount *to be used for the purpose of making payment to the Wells & Newton Company of the amount found to be due,* etc., and in support of and justifying the request for that sum it transmitted the report of its auditor embracing numerous facts upon which the board had acted. When the special estimate was presented to the board of estimate and apportionment under subdivision 8, section 877, Education Law, that board was empowered to exercise the authority conferred upon it in a consideration of the annual estimate filed with it by the board of education. The appropriation asked for being in excess of the four and nine-tenths mills appropriation to which the board of education was absolutely entitled, under

142   People ex rel. Wells & Newton Co. v. Craig.

[232 N. Y. 125]        Opinion, per Hogan, J.        [Nov.,

subdivision 8, section 877, Education Law, the board of education was required to submit with its requisition a complete statement of the purposes for which the appropriation was requested and the necessity therefor. The board complied with that requirement by transmission of the complete report of its auditor accompanying its requisition. The presumption is that the members of the board of estimate and apportionment performed the duties imposed upon them, made examination as to the necessity of the appropriation petitioned for and the reasonableness of the amount requested. The vote of the board of estimate was unanimous and the board of aldermen thereafter by resolution concurred in the resolution adopted by the board of estimate and apportionment. Immediately thereafter the claim of relator together with all evidence relating thereto and documents in connection therewith constituting the numerous exhibits in the record contained, and upon which the board of education acted, together with a certificate of the auditor of the board of education that the claim of relator amounting to $62,143.93 had been examined and *audited* and is chargeable to the revenue bond fund for the department, " Installation of the Heating and Ventilating Apparatus at the Evander Childs High School," etc., were filed with the comptroller respondent herein. The conclusion of the Appellate Division that the claim of relator had never been audited cannot be sustained.

The respondent asserts that by reason of clause J in the contract between the board of education and relator the latter may not assert a claim thereunder. The clause so far as material provides:

." * * * If the work be delayed by any act or omission of the city * * * or any act or omission of any contractor to perform his work for the city, the committee on buildings or whoever is directed by this contract to make the certificate in reference to time, shall then extend the time for the completion of the

work for such period as the engineer in charge shall certify that the work has been delayed. No allowance whatever as damages or otherwise shall be claimed by or made to the contractor because of any such delays.  *  *  * "

Counsel for appellant asserts in his brief and the statement is not controverted by respondent that clause J as set out in the affidavit of respondent is incomplete. The contract, a voluminous document, was presented upon the argument but does not appear in the record. We may assume that counsel for appellant is correct in his statement that the clause in question confers power upon the committee on buildings to suspend the work only " for the public interest." Such limitation of power would certainly be reasonable.

We are asked to determine that under clause J of the contract the committee on buildings of the board of education, by reason of defaults of construction contractors, was authorized to extend the time of relator to complete its contract (not by reason of act or solicitation on the part of relator who was ready and willing to complete its contract within the time prescribed therein, one hundred twenty days from October 25, 1915, but because of defaults of other contractors with the board of education), said extension covering a period of three years during which time relator would continue bound by the terms of its contract, while the board of education would not be liable to relator for any damage caused it by such delay, neither would relator be permitted to make a claim for loss occasioned by reason of delay. If the board of education possessed arbitrary power to suspend the work of relator as it did for a period of three years, it could exercise the same power and continue the extensions for a period of ten years without liability on the part of the board for the loss sustained however serious by relator.    .  .

It is inconceivable that the relator or the board of

144   People ex rel. Wells & Newton Co. v. Craig.

[232 N. Y. 125]      Opinion, per Hogan, J.      [Nov.,

education contemplated such a construction of the contract as is here sought to be established. That the board of education did not is demonstrated by its acts and declared intention to deal fairly and justly with relator while at all times preserving the interests confided to its charge. The board acknowledged an appreciation of the result of delay to relator during a period unparalleled in the history of the world, and which could not possibly be anticipated at the time the contract in question was entered into. In the administration of justice the courts will ever carefully scrutinize contracts which by their terms arbitrarily place one party thereto solely at the mercy of the other party to the instrument and in the interpretation of such contracts will adopt such construction as will be reasonable and just. Every contract implies good faith and fair dealing between the parties to the same. The contract in question, clause J, does not admit of a construction that the board of education could by the exercise of arbitrary power extend the time of relator's work and delay the same for three years or longer. The clause must be construed as inapplicable to delays so great or so unreasonable that they may fairly be deemed equivalent to an abandonment of the contract and thus interpreted was not a bar to relator's claim. (*Johnson* v. *City of New York*, 191 App. Div. 205; affd., 231 N. Y. 564.)

Counsel for respondent argues that the arrangement made between the board of education and relator whereby the latter agreed to resume work and complete its contract, operated as a new contract between the parties which could not be entered into without bids therefor, or if not a new contract and is to be construed as a modification of the existing contract the same was violative of article 3, section 28, of the Constitution of the state. The Appellate Division in its opinion considered the two propositions adversely to the respondent and in such conclusion I concur. The board of education had

power to enter into the original contract and in view of the existing extraordinary conditions in the public interest, to provide for a modification of the same. The board was confronted with a claim for breach of contract to which as has been indicated clause J of the contract would not be an answer. Relator refused to longer submit to the delays imposed upon it or accede to the demand to proceed under the contract at a loss for which it was not responsible but for which the board of education or its contractor was responsible. The school building had been in course of erection and completion for some five years during which period the lack of a sufficient number of school buildings in the city of New York was subject of public comment. Confronted with such condition it was not only within the power of the board of education to secure a modification of the contract but a duty so to do was essential to advance the cause of education. The modified contract did not in any degree violate the provision of the Constitution, section 28, article 3, which prohibits the legislature, common council of a city or board of supervisors from granting extra compensation to a contractor. The board of education, assuming it was included in the inhibition, did not grant extra compensation to relator; it simply awarded to relator the amount expended by it for work performed and materials supplied plus ten per cent for profit.

I recommend that the order of the Appellate Division be reversed and the order of the Special Term be reinstated, with costs to appellant in this court and the Appellate Division.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Ordered accordingly.