In the Matter of the Application of the BOARD OF EDUCATION OF THE CITY OF SCHENECTADY, Petitioner, for an Order of Mandamus against LEON G. DIBBLE, as Comptroller of the City of Schenectady, Respondent.

Supreme Court, Schenectady County, March 20, 1930.

*Maurice B. Flinn*, for the petitioner.

*Blodgett & Smith*, for the respondent.

HEFFERNAN, J. Petitioner, the board of education of the city of Schenectady, has applied for a peremptory order of mandamus to

compel the respondent, the comptroller of the city, to countersign warrants for the payment of salaries for the month of January, 1930, of four officers and employees in the department of education.

On September 17, 1929, in pursuance of section 877 of the Education Law, petitioner transmitted to the proper municipal authorities of the city of Schenectady its annual itemized estimate of the moneys which would be required for the ensuing fiscal year, including the amount necessary for the payment of salaries of the various superintendents, teachers, supervising staff and other employees. One item of the detailed estimate was $31,500 for salaries of the administrative officers and employees engaged in performing their duties in the main office. On October 1, 1929, the common council adopted the annual budget after its approval by the board of estimate and apportionment. In it was included the sum of $2,262,902.11 to be credited to the board of education for educational purposes. The budget thus adopted allocated the sum of $29,500 for the compensation of the officers and employees detailed for duty in the principal office, and not the sum of $31,500, the amount requested by the board of education in its estimate. On December 10, 1929, the board of education adopted a resolution increasing the salaries to the extent of $1,500 of four individuals in the department in question. The salaries of those who obtained the increase are not fixed by law, and the beneficiaries themselves are not members of either the supervisory or teaching staff of the education department. Their duties are administrative and clerical.

The respondent has refused to countersign the warrants for the payment of these salaries principally because the increases were not specified in the annual estimate, and this proceeding has been instituted for the purpose of compelling him to affix his signature thereto. Notwithstanding the reduction which was made by the city authorities in the board of education's estimate it is conceded that there are sufficient funds to the credit of the board remaining out of the money appropriated for that purpose to pay the disputed claims. It is obvious that the amount of the increases could not have been included when the estimate was submitted because no such determination had then been made.

The board of education is a corporation separate and distinct from the city and as such is charged by the State with the responsibility of furnishing an efficient system of public education, and in this respect it is not subject to, or controlled by, the municipal authorities. As such governmental agency its powers and duties are prescribed in the Education Law. That statute likewise imposes obligations upon the city, and outlines the procedure to be followed between the two corporate bodies. The provisions of law governing

the duty and authority of the respective corporations are not, however, entirely consistent. In order to enable boards of education to properly discharge the duties enjoined upon them they are clothed with authority to act independently of the city authorities. (*People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125; *Matter of Fuhrmann* v. *Graves*, 235 id. 77.) The Education Law was enacted so that the State might reassume its control of the instruction of our youth which it had hitherto delegated to the municipalities. This resulted from the settled policy of the State to divorce the business of public education from all other municipal interests. The change was made for the very laudable purpose of liberating our system of public instruction from all political taint. It may, perhaps, be argued, and not altogether without reason so far as the taxpayer is concerned, that in this process of evolution we have merely changed our masters, and substituted one brand of tyranny for another.

The statute (Education Law, § 868, subd. 2) provides that the board of education in a city of the second class, such as Schenectady, shall have power to create and maintain such positions as in its judgment may be necessary for the proper and efficient administration of its work, and to appoint such officers, secretaries and other employees as it shall determine necessary for the competent management of the schools and other business activities. The board may also fix the salaries, not only of the supervising and teaching staffs, but of all other employees whose salaries are not fixed by law. (Education Law, § 887.)

It is the duty of the city officials to appropriate the necessary funds for educational purposes, and to see that the money raised by taxation for that use and otherwise received shall not be used for purposes other than those authorized by the Education Law. The board of education is annually directed to submit to the city authorities an estimate of the funds required for the support and maintenance of the public schools. The board of estimate and apportionment, after an examination of the estimate so submitted, may increase, diminish or reject any item contained therein except for fixed charges for which the city is liable. (Education Law, § 877, subd. 4.) Any reduction, however, must be in the gross amount. The only control which the city has is as to the total amount to be used for educational purposes. This measures the extent of its authority. It can reduce the total amount to be expended but cannot control the way in which such expenditures shall be made. In the last analysis it is for the board of education to say how the money within its control shall be expended. The board of education must function within the limits of the appro-

priation made for its benefit, and may not incur a liability for any purpose in excess of the amount available therefor or otherwise authorized by law. (Education Law, § 877, subd. 10.) The detailed items of the board's estimate are merely for the purpose of supplying the city authorities with information to aid them in determining the total amount to be appropriated. (*Matter of Emerson* v. *Buck*, 230 N. Y. 380; *Matter of Reif* v. *Schwab*, 204 App. Div. 50.) Any changes made in the items by the board of estimate and apportionment are advisory only. It is evident that the items of the estimate are not final and unalterable like the laws of the Medes and the Persians. With the particular items going to make up the estimate, which includes salaries for teachers, employees, servants and other persons assisting in the administration of educational affairs, the city has no particular concern except that it may direct how the funds shall be classified. (*Matter of Fleischmann* v. *Graves*, 235 N. Y. 84.)

I conclude, therefore, that the salaries in controversy were lawfully fixed by the board of education. That body had the right to fix them. Money is available to pay them. The comptroller is not vested with authority to question the legality of the charge. No doubt in this instance he is acting in good faith. However, upon receipt of a claim properly audited by the board of education the only duty devolving upon him is to ascertain whether or not the requisition embraces charges against the education fund as disclosed by the records in his department. If the requisition is correct he has no discretion. His duty is to countersign the warrant. Consequently his refusal to countersign the warrants involved in this proceeding is not justified, and the application for a peremptory order of mandamus is granted.