HERMAN BUCK, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 27908.)

Court of Claims, February 23, 1950.

*George F. Roesch* and *Warren Kelly* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* and *Marvin P. Lazarus* of counsel), for defendant.

LAMBIASE, J.   Claimant sues to recover damages for injuries sustained by him by reason of an accident which occurred in the building of the Montgomery High School, in the village of Montgomery, Orange County, New York, on or about April 9, 1943, between 8:30 P.M. and 9:30 P.M. of that day, at which time he was properly in said building participating in and being in attendance upon a food production war training course of instruction being given there, which course included instruction in the repair and maintenance of farm machinery.

The funds for the aforementioned course of instruction were Federal funds and had been appropriated pursuant to an act of the Congress of the United States.   (56 Stat. 562, 578–579; 77th Cong. 2d Sess., P. L. 647.)   This statute, at all times in the claim mentioned, provided, in pertinent part, among other things:

" Payments to States, and so forth (national defense): For payment to States, subdivisions thereof, or other public agencies operating public educational facilities, and, where hereinafter authorized, to vocational schools exempt from taxation under section 101 (6) of the Internal Revenue Code, colleges and universities, for the furtherance of the education and training of defense workers, through certification from time to time, in accordance with regulations promulgated by the United States Commissioner of Education (hereinafter referred to as the ' Commissioner ') under the supervision and direction of the Federal Security Administrator and approved by the President, by the Commissioner to the Secretary of the Treasury of the name of such agency or the name of such school, college, or university to whom payment is to be made, and the amount to be paid, such payment to be made prior to audit and settlement by the General Accounting Office as follows:

" (1)   *   *   *.
" (2)   *   *   *.

" (3) For the cost of vocational courses of less than college grade and related instruction provided by such agencies for out-of-school rural persons, who have attained the age of seventeen and who, if unemployed, have filed a registration card with a public employment office, and for nonrural persons who otherwise need the above requirements, and whose training is not feasible under subdivisions (1) and (2) hereof, such courses and instruction to be provided pursuant to plans submitted by such agencies and approved by the Commissioner, and for the cost of such vocational courses in the production of farm com-

modities and in the repair, operation, and construction of farm machinery and equipment (* * *) as may be necessary to meet the needs of farmers in obtaining the production goals of those farm commodities designated from time to time in the farm defense program and promulgated by the Secretary of Agriculture, * * *.''

Upon receipt of regulations from the United States Office of Education relating to the aforesaid statute and to the appropriation thereunder, the State of New York issued for the guidance of and made available to all boards of education a bulletin entitled '' Plans and Policies for the Maintenance of Food Production War Training ''. Inclusion in its curriculum of such a food production war training course of instruction by a local board of education was not mandatory, but was a matter entirely within its discretion. The establishment of such a course in any school of this State had to be based, however, upon the approval by the New York State Department of Education of an application to be made by the local board of education setting forth details of (a) the course to be offered, (b) the teaching schedule, (c) the persons to act as administrative advisors and teachers, and (d) the budget requested. Application for the instituting of such a course in the Montgomery High School was thereafter made to the New York State Education Department, and the application having been approved, the course was established in said school.

As a matter of administrative procedure under the Federal statute, the Federal funds allocated to the project in the State of New York were first received by the Treasurer of the State of New York, and such officer thereafter forwarded to each board of education participating in the course a check in gross for the total amount of its budget as approved. Checks for particular expenses and for salaries of personnel were not issued by the State Treasurer but by the local board of education which drew on the funds thus sent in gross to it by the New York State Treasurer. No State funds were involved in the administration and in the operation of said course.

Claimant herein, a young farmer, enrolled in the course attending a night class. He was learning to repair farm equipment. On the day and at the time hereinbefore mentioned and while he was thus in attendance upon said course in a shop room of the school, he suffered severe burns and was severely injured when an acetylene torch which was being used in a class in welding, also being conducted in said shop room, caused a

shower of sparks from a piece of soft metal to ignite gasoline contained in a pan which was under a truck upon which the claimant was working. Claimant and another extinguished the flames on the floor of the shop room with the use of a fire extinguisher, but they were not able to put out the flames in the pan of gasoline. The instructor in charge, in an effort to get the pan of gasoline out of the shop room, kicked it in the direction of the doorway where the claimant was standing having sought refuge there from the flames. The flaming gasoline spread to claimant's clothing and to his body with resulting severe injuries to him.

It is alleged in the claim, among other things, (a) '' That at all times hereinafter mentioned, the State of New York, through its officers, agents, servants or employees of the State Education Department, had approved, authorized and caused to be undertaken, operated and maintained, in said school building, a certain course of instruction '' (Claim, par. Third in part): (b) '' That, under the provisions of Section 94 (subd. 3) of the Education Law of New York, it was and is the duty of the Commissioner of Education of the State of New York to supervise, regulate, inspect and control the training or agricultural school and course of instruction hereinafter described, for the purpose of assuring to the public and to pupils thereat reasonable safeguards and precautions for their safety and welfare, and premises and conditions reasonably efficient and safe for such instruction.'' (Claim, par. Fourth); and (c) '' That said accident and injuries were caused without any negligence contributing thereto on the part of the claimant, but solely by reason of the negligence of the State of New York, its officers, agents, servants or employees; in that it knew, or in the exercise of due care and caution should have known, that a dangerous and negligent condition and nuisance existed in said school building as aforesaid; in that it failed to take proper and adequate precautions for the safety of persons engaged in said class of instruction; in that it failed to provide, or cause to be provided, a reasonably safe place and equipment for said educational activity; in that it permitted said instruction to be carried out in a dangerous, negligent and careless manner; in that it failed to exercise proper supervision thereover, and in that the person or persons in charge of said instruction were incompetent, inexperienced, and unsuitable for the purpose.'' (Claim, par. Eighth.)

Claimant contends that he has proved, among other things, the above enumerated allegations of his claim, and that upon the record herein he has established (a) that the local board of education was operating said course as the agent of the State of New York, and that the instructors connected therewith were therefore employees of the State, and that their negligence was the negligence of the State; and (b) that the State of New York was negligent in failing to perform its statutory duties and obligations under the provisions of subdivision 3 of section 94 of the Education Law in effect at all times in the claim mentioned, which provisions are now contained in section 305 of said law. The State of New York, on the other hand, maintains (1) that the local board of education involved herein was, at all times in the claim set forth, a governmental agency of the State operating as a separate and corporate unit functioning pursuant to delegated powers, and that the State is not liable for the torts of said board of education; and (2) that no liability has been established herein against it by virtue of the provisions of subdivision 3 of section 94 of the Education Law of the State of New York or otherwise. We are in agreement with the position taken by the State of New York herein, and we now discuss claimant's contentions.

" Public education is a state and not a municipal function." (N. Y. Const., art. XI, § 1; *Matter of Hirshfield* v. *Cook*, 227 N. Y. 297, 301.) " The Education Law was enacted to the end that this constitutional provision might be fully and fairly carried out." (*People ex rel. Bd. of Educ., Town of Brookhaven* v. *Graves*, 243 N. Y. 204, 209.) " The intent of the legislature in enacting the Education Law is clear. It imposes upon boards of education, as separate corporate bodies representing the state, the responsibility of furnishing an efficient system of public education (*People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125) and in this respect they are not subject to or controlled by the city authorities. In order to enable such boards to properly discharge the duties thus imposed, they are clothed with authority to act independently of the city authorities." (*Matter of Fuhrmann* v. *Graves*, 235 N. Y. 77, 82; *Matter of Divisich* v. *Marshall*, 281 N. Y. 170, 173.) " The board of education is a governmental agency of the state. It is not a civil division of the state." (*Herman* v. *Board of Educ., Town of Arcadia*, 234 N. Y. 196, 201.) They were created as a corporate agent to discharge governmental functions. (*Lessin* v. *Board of Educ. of City of N. Y.* [two cases], 247 N. Y. 503, 510; *Matter of Hirshfield* v. *Cook*, 227 N. Y. 297, 301, *supra*.)

There is a distinction between work performed by the State through an agent (*Maltby* v. *County of Westchester*, 267 N. Y. 375, 379) and work performed by a corporation in the exercise of a governmental function delegated by the State. Persons employed by an agent to perform the work of a principal are employees of the principal and not the employees of the agent. "When the state surrendered to the board a portion of its sovereign power and delegated to it a duty imposed upon the state by the Constitution (art. IX, § 1) [now art. XI, § 1] and it accepted the trust, it undertook to perform with fidelity the duties which the law imposed upon it. It is not immune from suit. The state has not created an irresponsible instrumentality of government * * * ". (*Herman* v. *Board of Education*, 234 N. Y. 196, 201, *supra;* matter in brackets and italics supplied.)

It has been said that " when the State *delegates* the governmental power for the performance of a State function, the agency exercises its independent authority as delegated, as does a city, and its responsibility for its acts must be determined by the general law which has to do with that class of agent and corporate activity, apart from liability on the part of the State. That is the case when the State delegates its State functions of education to a school board, its public health function to a local board of health, when it delegates broader governmental functions to a county, city or village. In such instances there is no authority for making claim against the State, but the agency exercising the delegated authority must respond for its own actionable conduct." (*Pantess* v. *Saratoga Springs Authority*, 255 App. Div. 426, 428.)

At all times in the claim mentioned there were schools operated by the State of New York. The Montgomery High School of the Union Free School District No. 7, Village of Montgomery, Orange County, New York, was not one of those, however, but was at such times a union free school district school owned, operated, and governed by a local board of education; and the instituting of the training course hereinbefore mentioned did not change its essential classification as such under the circumstances herein.

We conclude, therefore, that upon the entire case no basis has been established upon which it may be found that the State of New York either itself was operating the course of instruction involved herein or was operating the same through the aforesaid board of education as its agent so as to make it

chargeable with the conduct of said board of education in connection therewith. Consequently, if liability is to be attached to the State of New York, it must be based upon some other ground.

It is asserted by claimant that he has established such other ground of liability against the State of New York, viz. , the violation by the State of New York of its duties toward and its obligations to claimant imposed by the provisions of subdivision 3 of section 94 of the Education Law in effect at all times in the claim set forth and now contained in section 305 of said law. He maintains that said provisions were enacted for the purposes set forth in his claim (par. Fourth hereinbefore set forth at length), and that their violation constitutes negligence.

We have concluded that claimant may not succeed under the immediately foregoing specification of liability either, for assuming but not conceding (1) that there was a duty or obligation owing to him on the part of the State of New York under said subdivision 3 of section 94 of the Education Law (2) that the nonfeasance on the part of the New York State Commissioner of Education complained of herein constitutes a violation or omission of said statutory duty or obligation, and (3) that as to claimant said violation was negligence per se (*Amberg* v. *Kinley*, 214 N. Y. 531, 535; *Schmidt* v. *Merchants' Despatch Transp. Co.*, 270 N. Y. 287, 304, 305; motion for reargument denied, 271 N. Y. 531); or, assuming that the nonfeasance of the Commissioner of Education complained of constitutes negligence on the part of the State of New York upon any theory other than that of an omission or a violation by it of a statutory duty or obligation, upon the entire record herein, we are of the opinion that there are no facts sufficient to support a finding or conclusion as matter of fact that such negligence was the proximate cause of the accident to claimant described in the record and of the injuries sustained by him by reason thereof.

Lastly, in the view which we have taken of this case, we determine that no cause of action has been made out against the State of New York upon any theory of nuisance. (*McFarlane* v. *City of Niagara* Falls, 247 N. Y. 340.)

It must be borne in mind that we have been concerned herein only with the question of the liability on the part of the State of New York to claimant. If an actionable cause exists in favor of the claimant, it may be enforced only against a defendant or those persons who caused the injury.

We dispose of the reservations made at the trial, with an exception to the party feeling aggrieved thereby, as follows: Testimony at S. M. 106 is deemed to have been connected up, and, therefore, remains as part of the record. Claimant's objections set forth at S. M. 156 and at S. M. 200 are sustained.

Claimant's claim must be and hereby is dismissed upon the merits.