BOARD OF EDUCATION OF THE CITY OF SYRACUSE, Plaintiff, *v.* CHESTER H. KING, as Auditor of the City of Syracuse, Defendant.

Fourth Department, July 9, 1952.

*Henry S. Fraser* for plaintiff.

*George L. Richardson, Corporation Counsel (Richard T. Mosher* of counsel), for defendant.

KIMBALL, J. This case was submitted to the court upon an agreed statement of facts. Both parties have prayed for a declaration of their respective rights and duties. We find that the case is a proper one for a declaratory judgment.

The question submitted relates to the authority and duty of the defendant, as auditor of the city of Syracuse, to issue warrants for the payment of certain salary increases provided for teachers in the school system by the board of education of the city of Syracuse. By chapter 756 of the Laws of 1951 (Educa-

tion Law, art. 63) mandatory increases in salaries up to the twelfth step were provided. The new article 63 was effective July 1, 1951. Section 1 of chapter 756 of the Laws of 1951 encouraged the raising of the levels of teachers' salaries. Pursuant to the 1951 legislation, the plaintiff filed schedules of salaries, effective July 1, 1951, which included mandated salaries and the salaries of eighty-five others which were not mandated. The increment was $500 per year commencing July 1, 1951. Thereafter and during the months of September, October, November and December, 1951, the plaintiff certified to the defendant its payroll correctly computed for the amount of the monthly installments of increment for each of said eighty-five teachers. Although the defendant issued warrants for the payment of the mandated increments, he has refused to do so for the eighty-five teachers whose increase in salaries was not mandated but was provided by the plaintiff in its revised salary schedules. It had formerly been the usage for the board of education during the budget year to request the board of estimate to transfer unexpended appropriated funds within the limits of the appropriation for the so-called department of education so as to make such transferred funds readily available. In August, 1951, such request was made and the board of estimate complied therewith except as to the aforesaid eighty-five teachers whose increases were not mandated. In December, 1951, the plaintiff requested action of the common council so that nonmandated increments for five classroom teachers could be paid. A proposal to this effect was defeated in the council and the council has taken no action with reference to the other eighty teachers. The plaintiff does not concede that a request to the board of estimate to transfer funds within the appropriation is necessary or that action by the board of estimate is required before warrants for payment are issued in accordance with the certified payrolls.

Prior to October, 1950, the board of education prepared and filed with the Mayor and commissioner of finance of the city an itemized estimate for the ensuing fiscal year of 1951. (Education Law, § 2576.) This estimate was duly adopted by the board of estimate of the city about October 16, 1950, and was filed with the common council. On October 30, 1950, the common council, by ordinance, adopted said estimate as part of the annual budget of the city for the year 1951. The total appropriation in the budget as adopted for the education department was $6,418,425.20, exclusive of debt service. At all times since the certification of said payrolls, there has been and still

is an unexpended overall balance of appropriated funds in the budget, for the year 1951, for the department of public instruction sufficient to pay the installments of salary increments and also sufficient to pay all other obligations and requirements of the plaintiff certified to the defendant.

The controversy here may be briefly stated as follows: The plaintiff claims that so long as it keeps within the total amount appropriated for its use in the budget adopted by the common council, it has full and complete control of the number of its employees and teachers with the sole right to fix their salaries and that neither the auditor nor the board of estimate has any control or authority over its expenditures so long as the money is spent for educational purposes and the appropriation is not exceeded. The defendant contends that he is not permitted to issue warrants for the payments certified by the board of education for the reason that the amounts of the increments do not appear by line item in the estimate or in the budget which was adopted by the common council. The defendant's position may be summarized by the statement in his brief: "The defendant, on the other hand, denies any statutory authority to make any payment on any line unless there be either a specific appropriation in the budget or a transfer of funds to this specific item by the Board of Estimate. * * * If the plaintiff is correct in its construction of the Law then the plaintiff is for all intents and purposes fiscally independent of the City of Syracuse, once its budget has been approved by the Common Council." The defendant's conclusion as to the fiscal independence of the board of education, once the budget has been adopted and the money appropriated, is correct, not only by virtue of the statutes but in accordance with the plan and policy of the State to remove educational matters and finances from the welter of policies and politics necessarily inherent in the administration of a city and its several departments.

The fallacy of the defendant's position seems to be that he supposes the board of education to be a department of the City of Syracuse, in the same category as the fire department or the police department. The plaintiff is a body corporate (Education Law, § 2551) and the relation of principal and agent as between the city and the board of education does not exist. (*Titusville Iron Co.* v. *City of New York*, 207 N. Y. 203.) The defendant is attempting to cling to the educational system which was set up for the city of Syracuse in 1907. (L. 1907, ch. 543.) Without going into details, it is sufficient to say that the act of 1907 placed the " department of public instruction " under

the jurisdiction and control of the city. The commissioners and their subordinates were city officers and employees. Salaries were subject to approval of the board of estimate. The department of public instruction did not file an estimate for its requirements. The city authorities raised and spent the funds. All that need be said is that chapter 786 of the Laws of 1917 repealed the 1907 act and the system was changed so that the board of education thereafter hired, discharged and fixed the salaries of its teachers and other employees and made up its own estimate of expenditures. From 1917 on, the board of education, operating as a separate body corporate, was independent of the city except for the approval of the yearly estimate and its incorporation into the city budget by action of the city's governing body, the common council.

The defendant refers to the Charter of the City of Syracuse, effective January 1, 1938. (Local Laws, 1935, No. 7 of City of Syracuse, p. 246.) Again the defendant is in error in supposing that the charter makes a city agency of the board of education and that the board of estimate by section 71 of the charter, may fix the compensation of employees of the board of education on the assumption that they are city officers and employees. He is also in error in assuming that the provisions of the charter (§§ 80–83), relating to the department of audit, have any application to these funds appropriated and set off for the use of the board of education. These provisions relate to the public funds of the city, not to the funds of the board of education which has sole authority to disburse such funds upon orders drawn upon the city treasurer or other fiscal officer of the city. (Education Law, § 2580, formerly § 2530.) That section also provides (subd. 3) that it shall be unlawful for a city treasurer or other fiscal officer to permit the use of educational funds for any purpose other than that for which they are lawfully authorized and such funds shall not be paid out " except on audit of the board of education " and must be countersigned by the city comptroller or other officer designated. The only reference to the " Department of education " in the city charter is section 21 which completely nullifies any claim of right of the city council, board of estimate or city auditor to reaudit or approve or disapprove expenditures of educational moneys from the fund credited to the board of education in the hands of the city treasurer so long as the expenditures are for educational purposes and do not exceed the appropriation. Section 21 of the city charter reads: " *Department of education.* This charter shall not apply to or affect the maintenance, support or admin-

istration of the educational system ''. Whether an expenditure duly audited or certified by the board of education appears by line item in the estimate or the budget is immaterial nor is there any legal requirement that the board of estimate transfer educational funds from one category or classification to another in order that such funds may be available to the board of education. Charter provisions applying to city departments and city officers and employees have no force or effect as to the funds in the hands of the city treasurer to the credit of the board of education. The latter funds are not public city moneys in the sense used in the charter.

The defendant also relies upon subdivision 2 of section 2576 of the Education Law which gives the board of estimate the authority to '' increase, diminish or reject any item contained in said estimate ''. This provision is applicable to the city school districts of Albany, Syracuse and Yonkers. The same authority to the board of estimate was embodied in chapter 786 of the Laws of 1917. (Education Law, former § 877, subd. 4.) In cities where the money for use of the boards of education is raised under the provisions of a common budget adopted by the city which encompasses the needs not only of education but of all the city's activities as well, such authority in a board of estimate is salutary and necessary. Educational needs must be balanced with the needs of police and fire departments and other like city agencies. The annual estimate submitted by the board of education may be studied and discussed in relation to the total city budget. Such estimate is informational and tentative and the board of estimate may diminish or reject any item therein. Such rejection or diminution reduces the total appropriation for educational purposes. That, however, is the extent of the authority of the board of estimate. Its reduction is in the gross amount of the appropriation. After the common council had adopted the budget and the educational moneys have been set off to the board of education, there is no further duty or responsibility or authority in the board of estimate over the educational funds. How, when and in what amounts these funds are disbursed is solely the prerogative and responsibility of the board of education so long as they are spent for the educational purposes appropriated and within the limits of the appropriation.

The policy of the State has been to place public education beyond the control of municipalities. (*Matter of Divisich* v. *Marshall,* 281 N. Y. 170.) A board of education is not a department of a city but is an independent corporate body. (*Matter of*

*Fleischmann* v. *Graves,* 235 N. Y. 84; *Matter of Emerson* v. *Buck,* 230 N. Y. 380; *Matter of Fuhrmann* v. *Graves,* 235 N. Y. 77; *People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125.) The power of the board of estimate to reject or diminish is limited to a reduction in the gross amount. (*Matter of Reif* v. *Schwab,* 204 App. Div. 50; *Matter of Board of Educ. of City of Schenectady* v. *Dibble,* 136 Misc. 171; *Matter of McNutt Co.* v. *Eckert,* 232 App. Div. 721, affd. 257 N. Y. 100.) If the contention of the defendant were to be the rule, the auditor or the board of estimate would be administering public education in the city of Syracuse instead of the board of education. Changes in personnel and in salaries, increases and decreases in the teaching and administrative staffs during a fiscal year would then be under the control of an officer or body to whom or which the Legislature has delegated no such authority and control. Such a rule would be contrary to the public policy of the State for many years.

Upon the stipulated facts, the plaintiff is entitled to a judgment, without costs, declaring that the defendant had and has legal authority to issue warrants to pay the salary increments of the eighty-five teachers involved, in accordance with the amounts certified by the plaintiff to the defendant covering the period beginning July 1, 1951, and ending December 31, 1951; that it is the duty of the defendant to do so and that he be so ordered and directed.

All concur. Present — TAYLOR, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Submitted controversy determined in favor of the plaintiff, without costs. [See *post,* p. 1033.]