In the Matter of the Application of SIMON FLEISCHMANN et al., Respondents, for a Peremptory Writ of Mandamus against ROSS GRAVES, as Commissioner of Finance and Accounts of the City of Buffalo, Appellant.

**Buffalo (city of) — board of education — authority to employ counsel — indebtedness therefor may properly be paid out of surplus funds though they were not specifically appropriated for that purpose — when mandamus will issue to compel countersigning of warrant.**

1. The board of education of the city of Buffalo is a corporation which may sue and be sued (Const. of N. Y. art. 8, § 3; Education Law, § 300; General Corporation Law, § 11). Under subdivision 2 of section 868 of the Education Law authorizing it to appoint a superintendent of schools, teachers, " and other employees and other persons * * * in the business management or direction of its affairs as said board shall determine necessary," is found express authority for the employment of an attorney if it be necessary to defend any right or duty cast upon the board of education. But even if no express authority were conferred by statute upon the board, it had implied authority to employ counsel to institute a mandamus proceeding to compel the city council to adopt its estimates without reduction and to appear on its behalf upon an investigation conducted by the city council, where the duties of the corporation counsel were clearly antagonistic to the claims of the board and he refused to appear in its behalf.

2. Where there is a surplus in the board of education revenues over and above all charges or debts due, so much thereof as may be necessary may be applied in payment of an indebtedness legally incurred by the board of education for lawyer's fees notwithstanding that the amount was not included as such in the items of the estimate of the amounts to be raised in the city budget for educational purposes and there is nothing within subdivision 3 of section 880 of the Education Law to prevent the use of such moneys.

3. A peremptory writ of mandamus, therefore, will properly issue to compel the commissioner of finance and. accounts to countersign a warrant of the board of education for payment of the amount due. *Matter of Fleischmann* v. *Graves,* 202 App. Div. 825, affirmed.

(Argued January 9, 1923; dated February 27, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 30, 1922, which unanimously affirmed an order of Special Term granting a motion for a peremptory writ of mandamus.

*William S. Rann, Corporation Counsel (Ralph K. Robertson of counsel), for appellant.* There is no statutory authority for the employment of counsel by the board of education. (*Bristor* v. *Smith,* 158 N. Y. 157; *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297; *People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125.) The board of education has no implied power, incidental to its duties, to employ an attorney. (*Judson* v. *City of Niagara Falls,* 140 App. Div. 62; 204 N. Y. 630; *Gunnison* v. *Bd. of Education,* 176 N. Y. 11; *Yellow Pine Co.* v. *Bd. of Education,* 15 Misc. Rep. 58; *Bd. of Education* v. *Bd. of Education,* 76 App. Div. 355; 179 N. Y. 556; *Union Free School Dist.* v. *Vil. of Glen Park,* 109 App. Div. 414; *Jackson* v. *Bd. of Education,* 112 Minn. 167; *People* v. *Bd. of Education,* 255 Ill. 568; *Bd. of Education* v. *Scott,* 189 Ky. 225; *First Nat. Bank* v. *Whisenhunt,* 94 Ark. 583; *Andrews County* v. *Delight Special School District,* 95 Ark. 26.) The board of education had no authority to employ the respondents as attorneys in the mandamus proceeding instituted by the board to secure restoration of certain items to the school budget, since the claim therein made was contrary to the statute and the mandamus proceeding should never have been brought. (*Matter of Emerson* v. *Buck,* 230 N. Y. 380; *Smith* v. *Pittsburgh School District,* 70 Pa. Super. Ct. 184; *Fry* v. *Berks Co.,* 38 Pa. Super. Ct. 449.)

*Simon Fleischmann* and *Martin Clark* for respondents. The board had ample power and authority to employ applicants, as its attorneys and counsel, in the original mandamus proceeding and in the council investigation. (*Gould* v. *Bd. of Education*, 36 Hun, 16; *Bassett* v. *Fish*, 75 N. Y. 303; *State* v. *Aven*, 70 Ark. 291; *McCaffrey* v. *School District*, 74 Wis. 100; *Page* v. *Township Bd. of Education*, 59 Mo. 264; *Hosner* v. *Vil. of Leonard*, 163 Mich. 92; *Smedley* v. *Kirby*, 120 Mich. 253; *Quintard* v. *City of New York*, 51 App. Div. 233; *Matter of Tirrell*, 63 Misc. Rep. 502; *Wiley* v. *Seattle*, 7 Wash. 576.) In view of the refusal of the corporation counsel to act for the school board in either the original mandamus proceeding, or the council's investigation, the board was not only authorized, but it became its duty to employ special counsel. (*Judson* v. *City of Niagara Falls*, 140 App. Div. 62; 204 N. Y. 630; *O'Brien* v. *City of Niagara Falls*, 65 Misc. Rep. 92; *Matter of Peters* v. *Justice*, 75 Misc. Rep. 504; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125.) The board of education, alone, has power to determine on the necessity or advisability of employing counsel, and to make a valid contract for such employment, and to bind the city for the payment of the reasonable fees of such counsel. (*Matter of Peters* v. *Justice*, 75 Misc. Rep. 504.) The board of education acted within its powers in incurring the obligation for legal services rendered by relators, and relators are legally entitled to receive their pay therefor. (*Matter of Emerson* v. *Buck*, 230 N. Y. 380; *Van Dolson* v. *Bd. of Education*, 162 N. Y. 446.) Even in the absence of a specific appropriation for legal services, the board had authority to incur a contract liability for legal services. (*Mosher* v. *City of Elmira*, 83 Misc. Rep. 328; *Port Jervis Water Co.* v. *Vil. of Port Jervis*, 151 N. Y. 111; *North River Elec. L. & P. Co.* v. *City of New York*, 48 App. Div. 14; *Bates* v. *Board of Comrs.*, 274 Fed. Rep. 659; *Matter of Taxpayers*, 157 N. Y. 78.) The board had

1923.]               Opinion, per CRANE, J.          [235 N. Y. 84]

power, in the exercise of a reasonable discretion, to employ counsel to represent it, its members and employees on the councilmanic investigation, as well as in the mandamus proceeding. (*Matter of Hirshfield,* 227 N. Y. 297; *Judson* v. *City of Niagara Falls,* 140 App. Div. 62.) The receipt, custody and disbursement of moneys to support the public school system in the city of Buffalo are now exclusively controlled by the provisions of the Education Law. (*People ex rel. Cisco* v. *School Board,* 161 N. Y. 598; *Gunnison* v. *Bd. of Education,* 176 N. Y. 11; *People ex rel. Board of Education* v. *Finley,* 211 N. Y. 51; *People ex rel. Hylan* v. *Finegan,* 227 N. Y. 219.)

CRANE, J. We held in *Matter of Emerson* v. *Buck* (230 N. Y. 380) that the board of education in the city of Buffalo under the Education Law (Cons. Laws, ch. 16) could engage such teachers and employees as it thought necessary, and fix their compensation, but that the total amount of its budget or estimate for the year was subject to limitation and reduction by the city council. That litigation was the result of a reduction made by the city council in the estimates which were submitted by the board of education for the fiscal year ending June 30, 1921. The board believing that under the Education Law, as amended by chapter 786 of the Laws of 1917, the action of the city in making this reduction was illegal, instituted a mandamus proceeding to compel the city council and the commissioner of finance and accounts to adopt the estimates submitted by the board. The relief asked for was granted by the lower courts, but this court held as above stated that while the board of education could expend its moneys for the purposes stated in the Education Law, the total amount of its expenditures to be included in the budget for an ensuing year was subject to the discretion and action of the city authorities. This, we held, must be so on account of the amounts which the city had to raise for other municipal purposes, having

in mind always the provisions of article VIII, section 10, of the State Constitution that taxes to be raised should not exceed two per cent of the assessed valuation of the real and personal estate of the city.

In this litigation the board of education was represented by the firm of Fleischmann & Pooley. For their services they presented a bill to the board of education for $2,500 which has been audited and allowed by said board. Pending the litigation and in July, 1920, the city council pursuant to the provisions of the charter conducted an investigation of the board of education and many hearings were had before the commissioner of finance and accounts. The purpose of the investigation was to ascertain the general needs of the board and how the money appropriated in the budgets of other years had been expended. The same firm of attorneys appeared on these hearings before the commissioner, examined witnesses, challenged the power of the commissioner and prepared briefs. The corporation counsel of the city, who represented the board of education in other matters, was requested to appear for the board both in the mandamus proceeding and on the investigation. His duties were clearly antagonistic to the claims of the board and he refused to appear. For their services upon the investigation, Messrs. Fleischmann & Pooley presented a bill for $5,000 which has been audited and allowed by the board.

At this point, it may be well to note that the value of the services rendered by Messrs. Fleischmann & Pooley is not questioned. The commissioner of finance and accounts refused to recognize the warrant drawn by the board of education upon the ground that there was no item in the estimate submitted by the board for the current year authorizing the payment of lawyers' fees and that generally the board of education had no power or authority to incur such indebtedness.

This proceeding has been brought to compel the commissioner to countersign, pursuant to the charter and the

Education Law, this warrant of the board of education. The Appellate Division unanimously affirmed the order of the Special Term which granted the peremptory writ of mandamus, certifying to this court, however, that in its opinion there was a question of law involved which ought to be reviewed.

The only question of law involved is the power of the board of education to employ counsel to represent it in the proceedings above mentioned. When I say that this is the only question involved, I mean that this is the only question which counsel desire to have us pass upon. It is recited in the order granting the peremptory writ that counsel have stipulated that, without regard to the form of the remedy, the court should decide whether the claim of the applicants was a valid and enforcible claim against the city, the only point urged in behalf of the city being the power and authority of the board of education to employ the applicants as attorneys and counsel in the matters referred to in the moving papers. The Special Term justice also refers in his opinion to the fact that counsel before him interposed no objection predicated upon a point of procedure and expressly waived any objection the effect of which, if sustained, might be to relegate the relators to some other remedy against the city or departments of its government. No different position has been taken by counsel in their briefs or on argument before us. We, therefore, approach this one question for decision whether or not the board of education had authority to employ Fleischmann & Pooley to represent it in the action of *Emerson* v. *Buck* and in the investigation conducted before the commissioner of finance and accounts.

The board of education of the city of Buffalo is a corporation which may sue and may be sued. (Const. art. VIII, sec. 3; Education Law, sec. 300; General Corporation Law [Cons. Laws, ch. 23], sec. 11; *Gunnison* v. *Board of Education*, 176 N. Y. 11, 17; *Jaked*

v. *Board of Education*, 198 App. Div. 113; affd., 234 N. Y. 591.)

The general powers of the board, applicable to this question, are found in section 868, subdivision 2, of the Education Law, as amended. They include the power to appoint a superintendent of schools, teachers " and other employees and other persons * * * in the business management or direction of its affairs as said board shall determine necessary." Subdivision 10 of the same section gives to the board the power. " to perform such other duties and possess such other powers as may be required to administer the affairs placed under its control and management, to execute all powers vested in it, and to promote the best interests of the schools and other activities committed to its care." Here we find, in my opinion, express authority for the employment of an attorney if it be necessary to defend any right or duty cast upon the board of education. That the corporation counsel would not and could not represent the board in either of the proceedings above mentioned is apparent and impliedly conceded. What was the board to do, if it honestly believed that the city authorities were trespassing upon its prerogatives and curtailing the powers given it under the Education Law? Two courts thought the board was right in its attitude and this court did not determine that it was wholly wrong. Only as to the total amount of its estimates did we say that the city had supervision and control. That the board acted in good faith in employing counsel and believing that a necessity had arisen for their services is not questioned. The situation presented a case directly within the express wording of the provisions above quoted wherein the board was given the power to employ persons in the business management and direction of its affairs as it shall determine to be necessary for the efficient management of its educational and business activities. But even if no express authority were conferred by

statute upon the board to employ counsel, I think that under the circumstances as they here developed, the board of education had implied authority to procure the services of a lawyer. It could be sued for claims and even for damages. If for any reason the corporation counsel of the city was disqualified surely in such a case the board of education had implied authority to engage other counsel. (*Judson* v. *City of Niagara Falls*, 140 App. Div. 62; affd., 204 N. Y. 630.) If any of the duties or privileges given to the board of education by the Education Law were illegally interfered with by any other branch of the government, it was bound to take such legal steps as would permit it to properly function. Here again it would be necessary to employ counsel if the city attorney could not act. We believe, therefore, that in *Emerson* v. *Buck* as well as on the commissioner's investigation it was entitled to counsel and had the implied authority to employ them when it was apparent that the corporation counsel could not appear in its behalf. (*Quintard* v. *City of New York*, 51 App. Div. 233.)

The next question which we desire to consider is the method of payment. The board of education having power to employ counsel, it necessarily follows that they have to be compensated out of the funds raised for educational purposes. They are persons employed according to law by the board of education and have to be paid.. If there were no moneys out of which these lawyers could be paid, it might have been necessary for the relators or the board of education to have proceeded to raise the money under the emergency provisions of subdivision 8 of section 877 of the Education Law which reads: " A board of education may, to meet emergencies which may arise, submit a special estimate in which items for extraordinary expenses may be submitted to meet such emergencies. Such estimate shall contain a complete statement of the purposes for which the items are requested and the necessity therefor. The same method

of procedure shall be followed in submitting such estimate and such estimate shall be subject to the same consideration and action as is required in the submission, consideration and action upon the regular annual estimate submitted by a board of education. The common council in such a city shall have power to make the appropriations requested by a board of education in such special estimate. * * * in a city having a population of four hundred thousand or more and less than one million, * * * the council may temporarily borrow the amount appropriated on city certificates of indebtedness or by the issuance of revenue bonds, or other municipal bonds, * * *." There was no necessity for the board or the relators to resort to this method. It is conceded and appears from the affidavits submitted by the defendant that there was a surplus of $52,461.80 in the board of education revenues over and above all charges or debts due at the end of the fiscal year, June 30, 1921.

It is admitted by defendant's counsel that the council of the city could be compelled to raise money for the emergency needs of the board of education and for proper legal charges. That question, however, is not before us as there is already money enough in the hands of the city treasurer to meet such demands. The city makes the point, and this seems to be its chief objection to the payment of this bill, that no appropriation was made in the current year for lawyers' fees; that the items submitted in the estimate of the board of education while including salaries for teachers and other employees, did not include an allowance for lawyers or at least if it did include such an allowance, the amount was stricken out by the city council. The whole thing amounts to this. The board of education has legally incurred an indebtedness through necessity for lawyers' services. The city has in the educational fund sufficient money to pay the claim. It objects to payment because the amount was not included in the items of the estimate of the amounts

to be raised in the city budget for educational purposes. Of course such an amount could not be included at the time the estimates were submitted as the occasion for such services had not then arisen. Section 877 of the Education Law provides that a city like the city of Buffalo shall prepare annually an itemized estimate for the current or ensuing fiscal year of such sum of money as it may deem necessary for its purposes after crediting thereto the amount anticipated in the next apportionment of school funds from the state and the estimated amount to be received from all other sources. Such itemized estimate shall be filed at such times and in such manner as city departments or officers are required to submit estimates for such departments or officers, and shall include the salary of superintendent of schools, teachers and all other employees appointed or employed by the board. Subdivision 6 applies to the city of Buffalo and provides that such estimate shall be filed with the officer authorized to receive other department estimates and the same acted on by such officer and by the council of such city in the same manner and with the same effect as other department estimates. Subdivision 10 of the same section reads as follows: " A board of education shall not incur a liability or an expense chargeable against the funds under its control or the city for any purpose in excess of the amount appropriated or available therefor or otherwise authorized by law." The estimates submitted by the board stating the items of proposed expenditure are for the purpose of enabling the city to make up its final tax budget for municipal purposes. The statement of the items also furnishes the council with information enabling it to act reasonably and wisely in case a reduction of the total amount demanded is deemed necessary. Under any and all circumstances, however, the amounts submitted are mere estimates, except perhaps in the case of teachers' salaries which are specifically fixed as to the minimum by the law itself. That the board and the city authorities

do not consider the items of the estimate as final and conclusive is evidenced by the affidavit submitted in behalf of the defendant by Harry M. Jones of the department of finance and accounts of the city of Buffalo. He says that transfers of moneys from one fund to another in the accounts of the board of education are made on order of the commissioner of finance and accounts, and that the customary way is for the board of education to request the council to transfer moneys from the board of education revenue account to specified items in the board of education maintenance or salary account, or from one specified item to another specified item within the same fund. The practice is, therefore, for the commissioner of finance and accounts at the request of the board of education to use the funds of the board as requested or demanded so long as the general purposes of the Education Law are complied with. Within the provisions of subdivision 10 above quoted, the board of education has incurred an expense for lawyers' fees chargeable against its funds under the control of the city which is not in excess of the amount appropriated, or any how in excess of the amount available for such payment. There is nothing within subdivision 3 of section 880 to prevent this use of the moneys. It is there enacted that the officer having the custody of city funds shall not permit their use for any purpose other than that for which they are "lawfully authorized." This does not *necessarily* restrict payment to a classification. To pay lawyers necessarily employed in protecting or enforcing the claims of the board of education is a purpose for which "available" funds of the board of education may be lawfully used. The duty of the city officials under the Education Law and the charter of the city of Buffalo is: *First,* to appropriate money for educational purposes according to the proposed estimates readjusted by the city council in making up its budget for all the departments of the city so as to keep within the constitutional

tax limitation. *Second,* to see that the moneys so raised and placed to the credit of the educational fund shall not be used for purposes other than those authorized by the Education Law. With the particular items going to make up the estimate which include salaries for teachers, employees, servants and other persons assisting in the administration of educational affairs, the city has no particular concern except that it may direct how the funds shall be classified. (Sec. 880, subd. 3.) This we deem to be our holding in *Matter of Emerson* v. *Buck* (230 N. Y. 380) and in *Gunnison* v. *Board of Education* (176 N. Y. 11). In *People ex rel. Wells & Newton Co.* v. *Craig* (232 N. Y. 125, 139) we said: " A casual reading of the Education Law leads to the conclusion so tersely stated in the *Gunnison* case that the only relation of the city to the subject of education is as custodian of the school funds and to disburse the same according to the instructions of the board of education." (See, also, *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297.)

We are here dealing with a proper charge payable out of a balance of the funds of the board of education in the city treasury available for the purpose. The city has the money. It had not been appropriated for any other purpose at the time demand was made by the board of education for the payment of these lawyers' fees. The remedy by stipulation of the corporation counsel is not questioned. The main point is as to the legality of the charge and the power of the board of education to employ counsel. It is in view of these facts that we arrive at our conclusion. As stated by us in *Emerson* v. *Buck,* the authority of the city and the authority of the board may at times seem to be inconsistent, but we have no doubt that the fidelity of the officials representing the city will in most instances bring about a harmonious working of the law to accomplish its aims and purposes. That the city is given by subdivision 3 of section 880 a guard and watch over the educational

funds to see that they are not used for unauthorized purposes is quite apparent. All we determine by this decision is that the payment of these lawyers' fees is in this instance a lawful and authorized purpose.

The order appealed from should be affirmed, with costs.

HISCOCK, Ch. J., POUND, MCLAUGHLIN and ANDREWS, JJ., concur; CARDOZO, J., concurs in result; HOGAN, J., dissents.

Order affirmed, etc.