In the Matter of the Application of STEPHEN ZACHARKOW, Respondent, for a Mandamus Order against CHARLES W. BERRY, Comptroller of the City of New York, Appellant.

First Department, January 13, 1933.

*Henry J. Shields* of counsel [*Nelson Rosenbaum* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel,* attorney], for the appellant.

*Laurence B. Sargent,* for the respondent.

MARTIN, J.   Stephen Zacharkow, as president of S. Zacharkow, Inc., dealer in school furniture, brought this proceeding for a peremptory order of mandamus directing Charles W. Berry, the defendant herein, as comptroller of the city of New York, to countersign certain audits presented to him in order that the claim of the petitioner may be paid.

The petition alleges that from January to June, 1931, the board of education let contracts on open market orders which were awarded to the petitioner; that the petitioner duly entered upon the performance of such contracts and properly complied with all the terms, conditions and obligations thereof by him to be performed.   It is then alleged that prior to the commencement of this proceeding, and pursuant to section 880 of the Education Law, orders and audits were prepared and transmitted to the comptroller for his signature, but on or about June 5, 1931, the comptroller refused to countersign the audits because the bills were excessive.   The reason assigned for such excessiveness is that fraud was practiced through a system in force in the board of education in contracting for all of such work.

Subdivision 3, section 880 of the Education Law reads in part as follows: " It shall be unlawful for a city treasurer or other officer having the custody of city funds to permit the use of such funds for any purpose other than that for which they are lawfully authorized and such funds shall not be paid out except on audit of the board of education and the countersignature of the comptroller,   *   *   *."

In the present case the record discloses that this petitioner paid inspectors in the employ of the board of education a substantial part of the amount of the contract price, and such payments were met by adding same to the price charged for the work.   In this connection the affidavit of Peter L. Kenney, the chief of the bureau of audit in the department of finance, reveals that a clerk in the Bronx office of the bureau of maintenance and construction of the board of education, confessed that he accepted gratuities from contractors in hundreds of instances.   He described the system by which graft was paid by the contractors, which payment, as usual, was eventually borne by the taxpayers of the city.   He admitted that it was the practice to extend invitations to a limited number of contractors to bid but not in the order in which they appeared on the list.   The affidavit of Mr. Kenney makes very startling disclosures, showing how furniture was purchased and work performed in the board of education.   He said: " Where work is required to be done, the ' tissue specifications ' are drawn in the bureau and are thereafter approved and the estimated cost of said work fixed. Not less than three contractors are invited to bid and it was Gross-

man's duty to mail the ' tissue specifications ' and the invitations to bid to the required number of contractors in the order in which they appeared on the aforesaid list. Said Grossman extended the invitations to bid to contractors out of the order of rotation and confined the invitations to bid to a small group of contractors, of which the petitioner was one.

" These contractors collusively arranged among themselves the order in which each of their number was to obtain the job by making the low bid. To do this, it was arranged by this group of contractors, with Grossman, that he furnish them the estimated cost of the proposed work and thereafter this group decided among themselves who was to submit the low bid which was around the estimated cost. The remaining invited contractors of this group then submitted higher bids. The purpose of obtaining the estimated cost of the proposed work was so that the Main Office would accept the low bid submitted by the contractor selected by said group.

" For extending invitations to bid to said contractors out of the regular order and giving the said contractors so invited the estimated cost, said Grossman did receive from the successful bidder 5% of the bid price and, in many instances, 10%, payment being always made to him in cash either by the successful bidder or by the contractor who acted as collector or spokesman of the group bidding collusively.

" That on said June 12, 1931, after hearing the report of the said Special Committee, the Board of Education requested said Special Committee to continue its investigation and extend it to the offices of the Bureau of Construction and Maintenance maintained in the other boroughs of the City of New York.

" That the petitioner, Stephen Zacharkow, was a member of a group of contractors who submitted collusive bids to the said Board of Education upon the information received from said Grossman and petitioner paid said Grossman sums of monies amounting to 5 to 10% [of] the amount of the winning bid for giving the information as to the said estimated costs and for extending invitations to the petitioner and his group of contractors to bid out of the regular order.

" That on July 9, 1931, the Grand Jury of Bronx County indicted said Grossman, known as David Grossman, and the petitioner Stephen Zacharkow and five other contractors for conspiracy, and on July 24, 1931, the said Grand Jury presented four indictments against said Grossman charging him with the crime specified in Section 1826 of the Penal Law."

The affidavit then alleges that thereafter charges of accepting

bribes were made against several inspectors in the board of education and it was disclosed that the petitioner had paid to several of the accused inspectors sums of money for issuing oral orders to him.

In view of the above disclosures, the comptroller would be negligent if he failed to investigate and determine whether the petitioner made any such payment in connection with the items here claimed. The petitioner is not in a position to ignore the charges and demand payment on the purely legal basis of the inability of the defendant to make any inquiry into the matter.

The gross frauds systematically carried out by inspectors of the board of education who appear to have been given full power and authority to pass on the bills of contractors to whom they collusively gave the contracts clearly illustrates the fallacy of compelling the city of New York to pay bills audited by a department incurring the debts by contracts not awarded at public letting.

The affidavit submitted by Mr. Kenney shows the injustice that may result if the officer directed to audit and pay the bills of a municipality may not investigate the claims or reject those that are either excessive or fraudulent. It further illustrates the danger of allowing an audit by the party who is giving the work to contractors without a public letting and without any regulation or safeguard to prevent fraud. The system here followed by the board of education places the taxpayers at the mercy of corrupt inspectors.

If the laws now on the statute books are not sufficient to protect the city of New York or any other municipality when contracts are made without a public letting, proper statutes should be enacted to insure such protection. If sections 149 and 419 of the Greater New York Charter are applicable, the city is fully protected and the comptroller may refuse to pay more than the reasonable value of such work. If those sections do not apply to the board of education, they should be made applicable.

In view of the fact that some of the inspectors admitted the existence of a system such as has been described and which was fully exposed, the affidavit in support of the application for a mandamus appears to take very lightly the charges made in the papers filed in opposition to the motion. The payment of tribute under the system in vogue appears to have become a habit.

Contracts let without public letting have frequently been a source of annoyance, and in many instances, a source of corruption. The only means so far devised to protect the taxpayers is to limit the liability of the city to the reasonable value of such work or materials and to place the power to audit in the comptroller, who is then charged with the responsibility of payment after a thorough investi-

gation. If the comptroller fails to audit at full value, the contractor may recover the full value in an action against the city.

That the comptroller has an absolute power to audit in every case where a contract is awarded without public letting by the city of New York was held in the cases of *Smith Contracting Co.* v. *City of New York* (70 Misc. 132; affd., 146 App. Div. 760) and in *Dady* v. *City of New York* (65 Misc. 382).

In *Smith Contracting Co.* v. *City of New York* (146 App. Div. 760) this court said: " Reading sections 419 and 149 together the result is that while a head of department may make a contract for a particular job, of which the estimated cost is not more than $1,000, without public letting, the contractor may recover thereon only the sum at which the claim is audited by an auditor of accounts, or, if the contractor is dissatisfied with the audit, then the fair value thereof to be established by the contractor by competent evidence, and the amount which the officer of the city making the contract has promised to pay is expressly excluded as evidence of value."

In *Lewis* v. *Board of Education of City of New York* (258 N. Y. 117) the Court of Appeals said: "Although the Board of Education of the city of New York is a separate and distinct corporation from the municipality itself and is in effect a State agency for carrying out and enforcing our educational system (*People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125), and in this respect its officers and agents are performing State as distinguished from city functions (*Schieffelin* v. *Komfort*, 212 N. Y. 520), yet the Board expends the city's money raised by taxation, and within certain limitations its expenditures may be limited, investigated and controlled by the city authorities. (*Matter of Hirshfield* v. *Cook*, 227 N. Y. 297.) "

In *Matter of Brennan* v. *Board of Education* (245 N. Y. 8, 15) the court said that the right of municipal inquiry into the board of education was applicable in the case of a fraud, the opinion reading in part: " The audit, therefore, by the board of education of this amount due under the agreement with P. J. Brennan & Son for the construction of the public school was final unless set aside for fraud * * *."

In *Matter of Fleischmann* v. *Graves* (235 N. Y. 84, 95) the Court of Appeals said: " That the city is given by subdivision 3 of section 880 a guard and watch over the educational funds to see that they are not used for unauthorized purposes is quite apparent."

In *Matter of McNutt Co.* v. *Eckert* (257 N. Y. 100, 103) the court said: " Within the limitations of its appropriation (§ 877, subd. 10) the expenditures of school moneys for educational purposes is given to the Board of Education with very limited control by the

city authorities. The Board having audited a charge and issued its warrant, the only limitation upon its power is the duty of the Comptroller to see that the funds are used for a lawful purpose. He cannot countersign for an illegal charge or claim."

It is well-settled law in this State that a peremptory order of mandamus will not be issued where the defendant sets forth facts creating an issue to be determined by the court. In *People ex rel. Pumpyansky* v. *Keating* (168 N. Y. 390, 398) the court said: " When a relator in a mandamus proceeding goes to argument upon his petition and the opposing affidavits of the defendant and demands that a peremptory writ issue, as was the course pursued in this case, the proceeding is in the nature of a demurrer to the facts set up by the defendant, and the right to the writ must be determined upon the assumption that the averments in the defendant's affidavits are true."

Taking as true the statements set forth in the affidavit of Mr. Kenney, set forth above, it is clear that the petitioner is not entitled to a peremptory order of mandamus.

The order should be reversed, without costs, and the motion granted to the extent of allowing an alternative order of mandamus.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur; O'MALLEY, J., concurs in result.

Order reversed, without costs, and the motion granted to the extent of allowing an alternative order of mandamus.

Settle order on notice.