WILLIAM H. MCCABE, Appellant, *v.* LOUIS H. GROSS et al., Constituting the Board of Education of the City of Troy et al., Respondents.

Argued March 10, 1937; decided April 27, 1937.

*John H. Broderick* for appellant. Chapter 20 of the Laws of 1937 is unconstitutional and void, as it is in violation of the provisions of section 10 of article 8 of the Constitution of the State of New York. (*Levy* v. *McClellan*, 196 N. Y. 178; *Bank for Savings* v. *Mayor*, 102 N. Y. 313; *Kenwell* v. *Lee*, 261 N. Y. 113; *Board of Education* v. *Van Zandt*, 119 Misc. Rep. 124; 204 App. Div. 856; 234 N. Y. 644.)

*Frank S. Parmenter, Corporation Counsel* (*Edwin Vandewater* and *Frederick G. Clay* of counsel), for respondents. Chapter 20 of the Laws of 1937 was enacted pursuant to the command of section 1 of article 9 of the Constitution to provide for the maintenance and support of a system of free common schools, and is not in conflict with section 10 of article 8 of the Constitution. (*People* v. *Crane*, 214 N. Y. 154; *South Carolina* v. *United States*, 199 U. S. 437; *Bank of Chenango* v. *Brown*, 26 N. Y. 467.)

Article 9 of the Constitution is of equal dignity and force with other constitutional provisions and a law enacted pursuant to said article should not be held violative of any other provision of the Constitution. (*Matter of Smith* v. *St. Lawrence County*, 148 N. Y. 187; *People ex rel. Balcom* v. *Mosher*, 163 N. Y. 32; *Fort* v. *Cummings*, 90 Hun, 481; *State* v. *Butler*, 70 Fla. 102.) The Legislature may select such agents as it deems proper for carrying out the constitutional mandate to provide education, and chapter 20 of the Laws of 1937, establishing the city school district in Troy as its agent for school purposes in that city, is a proper exercise of such power. (*Bullock* v. *Cooley*, 225 N. Y. 566; *Matter of Emerson* v. *Buck*, 230 N. Y. 380.) In exercising the powers granted by chapter 20 of the Laws of 1937 to issue bonds of the city school district, the board of education does not act as agent of the city, but of the State. (*People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125; *Herman* v. *Board of Education*, 234 N. Y. 196; *Browning* v. *Hooper*, 269 U. S. 396.) The city school district of Troy is in effect a public benefit corporation and is the city of Troy school authority. (*Robertson* v. *Zimmermann*, 268 N. Y. 52; *Gaynor* v. *Marohn*, 268 N. Y. 417; *Longken* v. *City of Long Beach*, 268 N. Y. 532.) Bonds issued in the corporate name of the city school district of the city of Troy do not constitute " debt " of any " portion or part of " the city within the meaning of section 10 of article 8 of the Constitution of the State. (*Longken, Inc.*, v. *City of Long Beach*, 268 N. Y. 532.) The limitations of indebtedness prescribed by section 10 of article 8 of the Constitution apply with reference to the indebtedness incurred by the political subdivisions mentioned, not to indebtedness of independent taxing units authorized by law. (*Adams* v. *E. R. S. Institution*, 136 N. Y. 52; *Attorney-General* v. *Thompson*, 168 Mich. 511; *Board of Education* v. *Upham*, 191 N. E. Rep. 876; *Follett* v. *Sheldon*, 144 N. E. Rep. 867; *Kelly* v. *Brunswick School District*, 187 Atl. Rep. 703; *Bassett* v. *Fish*, 75 N. Y. 303; *Waters & Co.* v. *Gerard*,

189 N. Y. 302; *People ex rel. Sweet* v. *Lyman*, 157 N. Y. 368.)

FINCH, J. A single constitutional question is presented.

The city of Troy was successful in obtaining Federal aid for a Public Works Administration project, involving the construction and equipping of a new high school building, provided the city would itself find some $786,000 as its share. The debt limit of the city still permitted some margin of borrowing power under the restriction of the State Constitution (N. Y. Const. art. 8, § 10), but not sufficient to embrace the above amount. Application was made to the Legislature, which enacted a law providing that the Board of Education of the city school district of the city of Troy (which comprised all the territory of the city except that within the boundaries of Union Free School District No. 1 of the town of Lansingburg) was empowered to construct and equip a new high school for the city school district, and to issue and negotiate bonds of the city school district for the purpose of paying that portion of the cost to be borne by the city school district. " Said bonds shall be general obligations of said city school district and shall not be reckoned as part of the debt of the city of Troy, and the full faith, credit and taxing power of said city school district shall be pledged for the punctual payment of the principal of and interest on said bonds." (Laws of 1937, ch. 20.) The bonds are not to be issued unless the city of Troy, through the Common Council (by ordinance adopted by not less than two-thirds of all the members of the Common Council), shall approve both the project and the amount of bonds to be issued by the city school district, and such ordinance shall also be approved by the Board of Estimate and Apportionment of the city. The total amount of bonds to be issued by the school district for this purpose shall not exceed one and one-half per cent of the assessed valuation of the real estate in the city school district. A sum sufficient to pay the principal and interest of the

bonds, which shall mature in annual installments varying from two years to thirty-five years, shall be levied and collected and disbursed by the same officers, and pursuant to the same procedure as is provided by law for the raising, collection and disbursement of other school moneys of the city school district, which are performed by the proper city officials. " The carrying out of such project and the issuance of such bonds shall not be subject to any referendum vote * * *."

The plaintiff brought a taxpayers' action (Gen. Mun. Law [Cons. Laws, ch. 24], § 51) for an injunction to restrain the Board of Education from issuing the bonds. From a judgment granted at Special Term dismissing the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, an appeal was taken directly to this court (Civ. Prac. Act, § 588, subd. 3) to test the validity of this legislation (Laws of 1937, ch. 20) under the provisions of the Constitution of the State (Art. 8, § 10). Do these bonds fall within the restriction of the State Constitution setting up a debt limit? If so, their issuance is prohibited and they are void.

The question involved is one of importance and has not been passed upon by the courts of New York. Decisions in other States, because of differing conditions, are of little, if any, assistance.

The Education Law (Cons. Laws, ch. 16) provides for a general system of school districts which are under the legislative direction of the Regents and the executive direction of the Commissioner of Education (Education Law, § 20). The types of school district include (a) common school districts, the trustee or trustees of which constitute separate corporate bodies, with very broad powers, including the power to assess and collect school district taxes (Education Law, §§ 270, 275, 410, 432); (b) union free school districts, governed by boards of education, the limits of which may or may not correspond to those of an incorporated village or city (Education Law, §§ 141, 301,

302,) (The boards of education are separate corporate bodies [Education Law, § 300] with many of the powers and privileges, and subject to substantially the same duties as trustees of common school districts [Education Law, §§ 310, 317]), and (c) city school districts, of which the case at bar is an example, where there is a separation in functions only between the boards of education and municipal officers, but where the Board of Education is a department of the city government. (*Matter of Fleischmann* v. *Graves*, 235 N. Y. 84.)

A history of the school districts of the city of Troy is as follows: In 1816 the city was incorporated. Prior to the year 1900 the boundaries of the city and the city school district were coterminous. In 1900 portions of certain towns were annexed to the city, including the territory in Union Free School District No. 1 of the town of Lansingburg. The Union Free School District No. 1 has since operated independently as a union free school district, and issues its own bonds in the corporate name of the Union Free School District. The territory in this Union Free School District is now, as noted, a part of the city of Troy. Heretofore the city has issued bonds on behalf of the city school district in the corporate name of the city. Such bonds are payable, however, primarily from taxes from the city school district, and, secondarily, from all taxable property of the city. (Laws of 1873, ch. 126; Troy School Commissioners Act, Laws of 1892, ch. 80; the City Charter, Laws of 1892, ch. 670, as amended; Second Class Cities Law [Cons. Laws, ch. 53], and amendments; Education Law, § 879; Second Class Cities Law, § 60.)

We have, therefore, entirely within the city of Troy two separate school districts, one a city school district and the other a union free school district, which, together, constitute all the territory of the city. The assessed valuation of the taxable real estate of the whole city is $74,071,817, and of the city school district $62,788,847.

The portion of the Constitution involved reads as follows (Art. 8, § 10):

" * * * No county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city * * *

" * * * and any debt hereafter incurred by any portion or part of a city, if there shall be any such debt, shall be included in ascertaining the power of the city to become otherwise indebted."

It is to be noted that we are dealing in the case at bar with a city school district, as distinguished from a union free school district or a common school district.

If we should ignore all historical considerations, including the facts which gave rise to this provision of the State Constitution and the practical results, and read with strict literalness the constitutional provision (Art. 8, § 10), an argument could be made that the bonds in question should not be included within the constitutional prohibition, since nominally the city does not appear as the debtor on the bonds. Some support for this view may be found in *Adams* v. *East River Savings Institution* (136 N. Y. 52), where it was held that the debts of the county and of the city must be taken distributively and not collectively and, therefore, that the power of the county and of the city to borrow was restricted as to each only by the amount of its own debt. The situation as between the county and city is not the counterpart of the situation as between a city and a city school district. Moreover, so to construe this constitutional provision would be to place emphasis on form rather than substance, since the burden of the taxes, both of the city school district and of the city, falls upon the same real property. The name on the bond, therefore, assumes a minor importance, and we are left free to ascertain the real intention expressed by the language used in this constitutional provision. This intention appears unmis-

takably clear if we consider the evil which the constitutional provision was drawn to remedy, the facts to which it was to be applied, and its own wording. While constitutional and statutory restrictions against borrowing by States appeared much earlier, it was from the economic crisis of 1873–74 that the movement had its inception to restrict the borrowing power of municipalities. The economic disasters to many municipalities resulting from reckless aid to railroads, coupled with excess optimism and demand for local improvements, and hastened by waste, extravagance and corruption, furnished the basis for the restriction on the debt-borrowing capacity of counties and cities if the constructive forces were to be in the majority and prevail over those leading to disintegration. The mischief to be prevented was the creation of an excessive debt, the carrying charges of which would fall upon current revenues, and the principal upon posterity. (*Matter of Fleischmann* v. *Graves*, 235 N. Y. 84. Cf. *Bank for Savings* v. *Grace*, 102 N. Y. 313; *Levy* v. *McClellan*, 196 N. Y. 178.) In November, 1884, this constitutional provision was applied at first to cities of over 100,000 population and limited their debt-incurring capacity for any purpose to ten per cent of the assessed valuation of the real property within the city limits. This, then, applied only to the three cities of New York, Buffalo and Rochester, in each of which all the debts incurred for the city school district were incurred in the name of the city. There could be no doubt, then, in the minds of the framers of this constitutional provision, and of those voting in its favor, that the language " No * * * city, shall be allowed to become indebted for any purpose * * * which * * * shall exceed ten per centum of the assessed valuation " applied to the debts incurred on behalf of the city school district as well as those incurred on behalf of the city for any other purpose. Thus the intent was clear. No doubt remained that the constitutional restriction was intended to include the debts of the city school district. Also in 1894, when this provision was

extended so as to apply to all cities without regard to size, the limited time at our disposal for research has not revealed any city school districts the debts of which were not incurred as city debts. Certainly this was the general rule. The same language, the intent of which had been fixed by its earlier use, was extended by the amendment of this section in 1894 to all cities, and no exception to exclude the debts of city school districts was incorporated in the provision. Thus it was clear that the intent was to include debts of the city school district within the constitutional prohibition. In *Board of Education* v. *Van Zandt* (119 Misc. Rep. 124; affd., 204 App. Div. 856; affd., 234 N. Y. 644), which was an analogous case construing the provision of the same section which limits the amount to be raised by tax for city purposes, " * * * in addition to providing for the principal and interest of the county or city debt, shall not in the aggregate exceed in any one year two per centum of the assessed valuation of the real and personal estate of such county or city," it was held that the term " city purposes" included money raised for educational purposes, a State function, as well as money raised for purely local purposes. The foregoing case was stronger in favor of the appellant than is the case at bar, for the term " city purposes " is not as inclusive as the term " to become indebted for any purpose or in any manner." Respondents seek to place the decision in *Board of Education* v. *Van Zandt* (*supra*) upon the ground that the debt for the educational purpose was the debt of the city, but the decision went on no such slender ground, the court saying: " The adoption in the final sentence of the meaning of the phrase ' city purposes ' as used in the first sentence is supported by the practical construction that has been put upon it in its actual application. For nearly forty years the cities of the State have construed this section to include taxes levied for educational as well as for other State functions. Education is a State function, but so is fire, police and health protection and public charity. No question has been heretofore raised

as to the inclusion of taxes for any of those purposes in the two per cent limitation. On the contrary, it has been assumed for nearly four decades by those having the power to levy taxes in cities that ' city purposes ' as used in the section includes all taxes which the city may legally impose " (p. 126).

In *Gaynor* v. *Marohn* (268 N. Y. 417) we held an act creating a light, heat and power district for the purpose of purchasing or establishing lighting and power plants whereby the inhabitants of the district may be furnished with light, heat and power through privately-owned and operated utilities, and the bonds of which are payable out of funds to be raised in the district by proper assessment upon the lands benefited, does not create an indebtedness within the constitutional prohibition (Art. 8, § 10).

In *Robertson* v. *Zimmermann* (268 N. Y. 52) the Legislature created a body corporate to be known as " Buffalo Sewer Authority," whose corporate liabilities were limited to five years and thereafter until all its liabilities had been met and its bonds paid in full, or such liabilities and bonds otherwise discharged. This authority was given complete jurisdiction over the existing sewer system and all facilities for the disposal of sewage for the city of Buffalo, and upon completion of the project, to establish sewer rents, to be collected from all the real property served by its facilities. These rents were to constitute a lien upon the real property served, and to have the same priority as the lien of a general tax of the city, which lien might be foreclosed in the same manner as a tax lien. This authority, moreover, was empowered to issue bonds which were not to constitute a debt of the State or city, but were to be payable only from the funds of the sewer authority. Since the authority could not pledge the credit of the city in any way, and since its bonds were to be payable wholly from the revenues of the authority for service benefit rendered, this court held that the indebtedness created by the authority should not be reckoned as a part of the debt limit provided by the State

Constitution (Art. 8, § 10). In *Longken* v. *City of Long Beach* (268 N. Y. 532) this court held also that there the amount involved was not within the debt limit of the city. In that case an act of the Legislature authorized the city of Long Beach to accept and use any moneys which might be donated to the city by any agency of the Federal government for the construction, reconstruction or improvement or protection of the ocean beach lying within the city or adjoining the lands within the city, and also giving power to the city to borrow additional sums necessary for such improvement. The requisite funds to pay the bonds were not to pledge the credit of the city but were to be raised by the levy of assessments upon the real property specially benefited by the improvement.

So not only is the intention unmistakable that this restriction covers school debts of city school districts, but this result is somewhat confirmed by the fact that until the adoption of the present act (Laws of 1937, ch. 20) there has been no legal recognition of the so-called city school district as an entity separate and apart from the municipal corporation. Furthermore, this particular act does not purport to give to the so-called city school district general power to issue bonds for the purpose of erecting school buildings, but only authorizes this so-called city school district to issue bonds for this one high school. In other words, in order to meet this situation, this act is adopted to apply only to this specific case. If this city school district can be created as an entity, separate and apart from the municipal corporation, upon the theory that the State is thus making the city school district its agent, because education is a State purpose, so also may special districts be created in the same way by police, fire and health districts, since police, fire and health can likewise be considered on occasion as State purposes, in the same way as education. Thus not only will the debt-borrowing capacity of cities be allowed

to expand, but these separate districts will be able to incur indebtedness without any constitutional limitation whatsoever.

The respondents point to that section of the Constitution reading: " The Legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated " (Art. 9, § 1), and claim that this section excludes debts arising on account of city school districts from the restriction in article 8, section 10. If this article were omitted entirely from the Constitution, the Legislature would still have power to create and maintain a school system, unless this was prohibited by the Constitution. Moreover, nothing is found in article 9, section 1, which provides that, in carrying out this system of free schools, the Legislature shall disregard the prohibition in article 8, section 10, but, on the contrary, historical considerations show unmistakably an intention to include in the constitutional restriction school debts of city school districts, which intention has been confirmed by acquiescence in such intention for many decades by the cities of the State.

It follows that the judgment should be reversed, without costs, and the motion denied. (See 274 N. Y. 611.)

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur.

Judgment reversed, etc.